Argued and submitted September 7, alternative writ dismissed December 30, 1982

# STATE ex rel HYDRAULIC SERVOCONTROLS CORPORATION,
*Plaintiff-Relator,*

*v.*

# DALE,
*Defendant.*

## (No. A8101-00243, SC 28669)

657 P2d 211

Mildred J. Carmack, Portland, argued the cause for plaintiff-relator. With her on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Keith Bauer, Salem, and Willard L. Cushing, McMinnville, argued the cause for defendant. Also on the briefs were Parks and Bauer, Salem, and Cushing, Johnstone & Peterson, P.C., McMinnville.

Before Lent, Chief Justice and Linde, Peterson, Campbell, Roberts and Carson, Justices.

CARSON, J.

## CARSON, J.

This is a mandamus proceeding brought by Hydraulic Servocontrols Corporation (Hydraulic), a New York corporation, to compel the defendant circuit judge to dismiss (as to it) a complaint in products liability filed in the Circuit Court for Multnomah County by Cascade Steel Rolling Mills, Inc. (Cascade), an Oregon corporation, against Cessna Aircraft Company (Cessna), a Kansas corporation, Western Skyways, Inc. (Western Skyways), a Delaware corporation, The Garrett Corporation (Garrett), a California corporation and Hydraulic. We issued the alternative writ here and in the case of *State ex rel Michelin v. Wells,* 294 Or 296, 657 P2d 207 (1982), to consider, for the first time, the extent of Oregon's long-arm jurisdiction under ORCP 4, in light of the United States Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson,* 444 US 286, 100 S Ct 559, 62 L Ed 2d 490 (1980).

In December 1979, Cascade purchased a 1978 Cessna aircraft in Oregon from Cessna and Western Skyways. Garrett manufactured the engine which incorporated a device called a servo actuator manufactured by Hydraulic. Less than two weeks after Cascade purchased the aircraft, it crashed in California.

The second amended complaint alleges that Hydraulic is liable in strict liability and negligence for defects in the design and manufacture of the servo actuator. Hydraulic moved to dismiss, contending that Oregon lacked personal jurisdiction over it because the aircraft crashed in California and because Hydraulic does no business in Oregon and has no local presence or status. The affidavit accompanying the motion indicates that Hydraulic's only place of business is in New York, that it has no offices in Oregon, and that it does no business with anyone in Oregon. The affidavit also indicates that Hydraulic delivered the servo actuator to AiResearch Manufacturing Company, a division of Garrett, with the knowledge that Garrett would incorporate it into the engine of a Cessna aircraft. The defendant circuit judge denied Hydraulic's motion to dismiss.

The issue is whether, by placing its product into the stream of American commerce so that it reaches

consumers in Oregon by means of the commercial distribution activity of others, Hydraulic has sufficient contact with Oregon that exercise of jurisdiction is lawful when an Oregon resident is damaged by defects in that product. We hold that it is.

We previously have held that in applying jurisdictional statutes to nonresidents "two questions are presented: (1) Does the case fall within the terms of [a jurisdictional statute]? If so, (2) Does due process permit an Oregon court, as a matter of constitutional law, to obtain and exercise personal jurisdiction over the defendant in such a case?" *State ex rel Academy Press v. Beckett,* 282 Or 701, 708, 581 P2d 496 (1978). In this case, the questions merge because the only relevant provision of ORCP 4 is ORCP 4 L., a catchall provision extending Oregon jurisdiction to the outer limits of due process under the Fourteenth Amendment of the United States Constitution.[1] ORCP 4 L. provides for jurisdiction:

"Notwithstanding a failure to satisfy the requirement of sections B. through K. of this rule, in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."[2]

Subsections B. through K. of Rule 4 may appear to be redundant in view of the subsection L. catchall provision, but they are not superfluous. Based as they are on facts which the United States Supreme Court has held to be adequate bases for jurisdiction, these more specific provisions serve to narrow the inquiry so that if a case falls within one of them, there is no need to litigate more involved issues of due process.[3] Once a plaintiff alleges

---

[1] Although ORCP 4 L. also requires consistency with the Oregon Constitution, there is no contention that exercise of jurisdiction would violate the Oregon Constitution in this case.

[2] Rule 4 L. is a codification of our earlier holding that Oregon's jurisdictional statute, former ORS 14.035, was intended to reach the outer limits of due process. *State ex rel Academy Press v. Beckett,* 282 Or 701, 708, 581 P2d 496 (1978).

[3] The Council on Court Procedures, established by the legislature in 1977, modeled the present jurisdiction rules after the Wisconsin statute. F. Merrill, *Jurisdiction over Parties; Service of Summons,* in Oregon Law Institute, 1980 Oregon Civil Procedure Rules 230 (1979). *See* Wis. Stat. Ann. § 801.05 Revision Notes—1959 (West 1977).

facts bringing his or her case within a specific provision, that ordinarily will be the end of the matter. On the other hand, if resort to ORCP 4 L. is necessary, then the limits of due process must be explored. This is such a case.

The Due Process Clause of the Fourteenth Amendment has been held to require that personal jurisdiction over a nonresident defendant be based on "minimum contacts" between the defendant and the forum state. *International Shoe Co. v. Washington,* 326 US 310, 316, 66 S Ct 154, 90 L Ed 95 (1945). Those contacts must be such that maintenance of the suit does not offend " 'traditional notions of fair play and substantial justice.' " *Id.* at 316, quoting *Milliken v. Meyer,* 311 US 457, 463, 61 S Ct 339, 85 L Ed 278 (1940).

In the years since *International Shoe* announced the minimum-contacts test for exercise of personal jurisdiction by state courts, the United States Supreme Court has elaborated on that test in only a handful of cases. In *Perkins v. Benguet Consol. Mining Co.,* 342 US 437, 72 S Ct 413, 96 L Ed 485 (1952), it found jurisdiction in Ohio for a cause of action which arose elsewhere, because defendant maintained what appeared to be a managerial headquarters in Ohio. In *McGee v. International Life Ins. Co.,* 355 US 220, 78 S Ct 199, 2 L Ed 2d 223 (1957), it found California jurisdiction over a Texas life insurance company that had solicited customers by mail, in part because California had authorized its insurance commissioner to accept service of summons in behalf of insurers doing business in the state.

The Supreme Court's cases since *McGee* tell us what minimum contacts are not rather than what they are, for no decision since *McGee* has sustained the exercise of in personam jurisdiction. *Hanson v. Denckla,* 357 US 235, 78 S Ct 1228, 2 L Ed 2d 1283 (1958), held that Florida could not exercise jurisdiction over the trustee of a Delaware trust

---

Apparently the drafters of the rule had two reasons in mind for including the more specific provisions. First, specifics would provide guidance for judges and attorneys. Second, in *Kulko v. California Superior Court,* 436 US 84, 98 S Ct 1690, 56 L Ed 2d 132 (1978), the United States Supreme Court found it significant that California had not expressed a particularized state interest in the subject by enacting a jurisdictional statute. *Id.* at 98. Thus, the drafters attempted to cover as many specific bases as possible so that in a close case Oregon could be said to have expressed a "particularized interest." *See, F. Merrill, supra* at 230-31.

simply because the settlor had moved to Florida after creating the trust and died there. In *Kulko v. California Superior Court*, 436 US 84, 98 S Ct 1690, 56 L Ed 2d 132 (1978), the Supreme Court held that, in a mother's action against her divorced husband for custody and child support modifications, California did not obtain in personam jurisdiction over the nonresident, nondomiciled father, even though the father and mother had married in California, the father briefly had been in the state, and he had acquiesced in the desire of one child to live in California.

None of the cases following *International Shoe* have considered whether a manufacturer is subject to an action on a products liability theory in a state where it has no direct contacts. The closest case factually is *World-Wide Volkswagen Corp. v. Woodson, supra,* in which plaintiffs sought to bring a products liability action in an Oklahoma state court against the German manufacturer, the Northeast regional distributor, and the New York local retailer of an Audi automobile plaintiffs had purchased in New York. A defect in the automobile had allegedly caused injury to plaintiffs as they drove through the State of Oklahoma. Although the manufacturer did not object to jurisdiction, both the regional distributor, World-Wide Volkswagen, and the retailer, Seaway Volkswagen, Inc., challenged the jurisdiction of the State of Oklahoma, each claiming that it lacked sufficient contacts with that state.

As the Supreme Court saw it, the issue was whether an Oklahoma court could exercise in personam jurisdiction consistent with the Due Process Clause, "when the defendant's only connection with Oklahoma [was] the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma." 444 US at 287. Denying jurisdiction, the court repeated its holding in *International Shoe,* that "a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." 444 US at 291.

The requirement of minimum contacts, the court said, performs two related but distinct functions. "It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that

the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." 444 US at 292.

The first of these functions, typically described in terms of "reasonableness" or "fairness," is less critical than it once was. The Supreme Court noted that the barriers to inconvenient litigation have been relaxed over the years because of fundamental changes in the American economy; modern transportation and communication make it " 'much less burdensome for a party sued to defend himself in a State where he engages in economic activity.' " 444 US at 293, quoting *McGee*, 355 US at 222-23.

Perhaps because of the decrease in importance of the first function, the *World-Wide Volkswagen* court focused primarily on the federalism concerns. The "reasonableness" of asserting jurisdiction over the defendant must be assessed " 'in the context of our federal system of government.' " 444 US at 293-94, citing *International Shoe*, 326 US at 317. Inherent in a federal system is the idea that the sovereignty of each state implies "a limitation on the sovereignty of all its sister states—a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment." 444 US at 293. The concept of territorial sovereignty is so important that

"* * * [e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunal of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." 444 US at 294, citing *Hanson v. Denckla*, 357 US 235, 251, 254, 78 S Ct 1228, 2 L Ed 2d 1283 (1958).

It is the defendant's contacts with the forum state which make it reasonable for that state to extend the territorial limits of its power and exercise jurisdiction. One way to judge that reasonableness is by the foreseeability of suit in the forum state. By "foreseeability" the Supreme Court does not refer to the mobility of the chattel and thus the expectation of its use in the forum state. What is relevant for due process is the foreseeability of being haled

into the forum state's courts, and it is "the defendant's conduct and connection with the forum state," 444 US at 297, that provides that expectation rather than any "unilateral activity" of a plaintiff. 444 US at 298. The advantage of the foreseeability requirement is that it "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." 444 US at 297. The Court concluded that

> "When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' (citation omitted) it has clear notice that it is subject to suit there, * * *.
>
> "* * * * *
>
> "* * * [I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." 444 US at 297-98.

Having established what it described as "principles," the Supreme Court went on to list all the things World-Wide and Seaway did not do in Oklahoma. Neither sold cars at wholesale or retail directly to Oklahoma residents nor sought indirectly to serve the Oklahoma market. Nor did they "avail themselves * * * of the privileges and benefits of Oklahoma law." 444 US at 295. Thus there was a "* * * total absence of the affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction." 444 US at 295.

We turn now to the facts in this case. Our inquiry is whether Hydraulic engaged in some conduct by which it sought to serve the Oregon market or purposely avail itself of the privilege of doing business in Oregon.[4] Hydraulic,

---

[4] Although *World-Wide Volkswagen* involved commercial distribution, manufacturers of components are clearly within the jurisdictional principles enunciated there. *See, Gray v. American Radiator & Standard Sanitary Corp.*, 222 Ill 2d

operating solely in New York, sells servo actuators it has manufactured in New York to businesses for use as component parts of other products. The finished products, in this case a Cessna aircraft, are to be sold in turn in a nationwide market. By undertaking economic activity of this kind with the expectation that its products ultimately will come to rest in every state, Hydraulic has effectively "deliver[ed] its products into the stream of commerce with the expectation that they will be purchased by consumers in [Oregon]." *World-Wide Volkswagen, supra,* 444 US at 298. Even though Hydraulic did not conduct any sales activities in Oregon itself, its business has been directly affected by sales transactions occurring here. To that extent, it has benefited from the protection which our laws have given to the marketing of Cessna aircraft containing its servo actuators. *Gray v. American Radiator & Standard Sanitary Corp.,* 222 Ill 2d 432, 176 NE 2d 761 (1961).

Hydraulic, having sold a product with the intention of deriving economic benefit from a national market, including Oregon, can expect to be haled into court in Oregon when a product containing its allegedly defective servo actuator is purchased here and causes injury to a resident. The alleged purchase in Oregon of the device which allegedly caused the injury is a substantively relevant forum-related fact, the absence of which caused a contrary result in *State ex rel Michelin v. Wells, supra.* Exercise of personal jurisdiction in this circumstance does not offend due process and is therefore allowed by Rule 4.

Finally, Hydraulic objects to Oregon's exercise of jurisdiction because the accident did not occur in Oregon. It may be that no court has yet exercised jurisdiction in this circumstance, but the issue is whether the contacts which do exist are sufficient, not whether some other type of contact is missing. Accordingly, where jurisdiction is based on purchase of products containing Hydraulic components in Oregon and injury therefrom to an Oregon resident, the

---

432, 176 NE2d 761, 766 (1961), where the Illinois Supreme Court stated that "if a corporation elects to sell its products for *ultimate use* in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products." (Emphasis added.) This statement was adopted by the Supreme Court in *World-Wide Volkswagen Corp.,* 444 US at 298.

site of the accident does not affect the otherwise constitutional sufficiency of the existing economic contacts.[5]

The alternative writ is dismissed.

---

[5] Hydraulic's objection may pose a *forum non conveniens* problem when the accident occurred elsewhere, *see State ex rel Academy Press v. Beckett,* 282 Or at 700, Linde, J., concurring, but it is not dispositive of the personal jurisdiction issue in this case. *See* Leflar, American Conflicts Law, p 60 (3rd Ed 1977).