L.B. FOSTER COMPANY, a Delaware corporation, Plaintiff,

v.

RAILROAD SERVICE, INC., a Nevada corporation, Defendant.

No. 89 C 7741.

United States District Court,
N.D. Illinois, E.D.

March 20, 1990.

Morton Denlow, Stuart Gimbel, Dardick & Denlow, Chicago, Ill., for plaintiff.

Burr E. Anderson, Allan W. Dub, Anderson & Dub, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff L.B. Foster Company brought this diversity action against defendant Railroad Service, Inc. for breach of two contracts in which defendant agreed to purchase railroad equipment from plaintiff. Defendant has filed a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). For the reasons stated below, defendant's motion to dismiss is denied.

### II. FACTS

For purposes of this motion, the Court accepts all undenied facts alleged in the complaint as true and resolves all disputed facts in favor of the party seeking jurisdiction. *Ben Kozloff, Inc. v. H & G Distributors, Inc.*, 717 F.Supp. 1336, 1337 (N.D.Ill. 1989). Plaintiff is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania. Plaintiff purchases and sells railroad equipment. It has a sales office located in Des Plaines, Illinois. Defendant is a Nevada corporation with its principal place of business in Lakeville, Minnesota. It provides services and products to the railroad industry. Defendant has never maintained an office in Illinois, nor does it market its services or products in Illinois. During the three years prior to this dispute, defendant purchased approximately one million dollars' worth of products from plaintiff through plaintiff's Illinois sales office.

Plaintiff's suit arises out of two contracts made with defendant. In late 1987, defendant telephoned plaintiff's salesperson at the Illinois office to place an order for railroad turnouts, which enable railroad cars to pass from one track to another. Plaintiff sent an acknowledgment of the order from its Illinois office to the defendant to sign and return to plaintiff's Illinois office. It is unclear whether defendant actually signed and returned the acknowledgment to plaintiff. In September, 1988, defendant again contacted plaintiff to order additional turnouts under the first contract. An acknowledgment was sent by plaintiff to defendant in October, 1988, which defendant signed and returned.

Plaintiff periodically sent invoices to defendant requiring that payment under the first contract be forwarded to a lock box in Atlanta, Georgia. Plaintiff alleges that it never received the money allegedly owed by defendant on the first contract. On May 5, 1989, a meeting was held between plaintiff and defendant's representatives at plaintiff's Illinois office to discuss defendant's obligations under that contract. However, no resolution was reached, and plaintiff contends that defendant still owes it money for the equipment.

In April, 1989, defendant telephoned plaintiff at its Illinois office to order tieplates. Plaintiff agreed to supply the tieplates on the condition that defendant make a down payment of fifteen thousand dollars to plaintiff in advance. Defendant sent the down payment to plaintiff's Illinois office. Upon receipt of the payment, plaintiff shipped the tie-plates to defendant. Plaintiff alleges that defendant owes it the balance due on the tie-plate order.

Under both contracts, plaintiff shipped the goods from sources outside of Illinois to defendant's projects sites which were also outside of Illinois. Furthermore, all the negotiations regarding the contracts were conducted by telephone or mail communication with the exception of the one visit to Illinois made by defendant's representatives.

Plaintiff asserts that the Court has personal jurisdiction over defendant because defendant has transacted business in Illinois within the meaning of § 2–209(a)(1) of the Illinois long-arm statute. Ill.Rev.Stat. ch. 110, § 2–209(a)(1). Alternatively, plaintiff argues that jurisdiction is proper based on § 2–209(c) of the long-arm statute, which permits the courts to exercise juris-

diction on "any other basis now or hereafter permitted by the state or federal constitution." Ill.Rev.Stat. ch. 110, § 2–209(c). Defendant contends that its relationship with plaintiff does not constitute transaction of business within Illinois under § 2–209(a)(1) and that assertion of jurisdiction pursuant to either § 2–209(c) or § 2–209(a)(1) would fail to comport with due process.

### III. ILLINOIS LONG–ARM STATUTE

Because this is a diversity suit, the Court has jurisdiction over defendant only if an Illinois state court would have jurisdiction. *Ben Kozloff*, 717 F.Supp. at 1337. Until recently, in order to determine whether personal jurisdiction over a non-resident defendant was proper, a court was faced with a two-pronged inquiry: first, whether the defendant's conduct fell within one of the categories provided in the long-arm statute;[1] and second, whether assertion of jurisdiction comported with the due process clause requirements of the United States Constitution. This two-pronged inquiry was necessitated by the Illinois Supreme Court's decisions in *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 197, 429 N.E.2d 847, 850, 57 Ill.Dec. 730, 733 (1981),[2] and *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 436, 427 N.E.2d 1203, 1206, 56 Ill.Dec. 657, 660 (1981).

Effective September 7, 1989, the Illinois long-arm statute was amended to include additional grounds upon which a court may base its jurisdiction. Among those additional grounds is § 2–209(c), which states: "a court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."[3] The parties in this action dispute the meaning of § 2–209(c). Plaintiff argues that § 2–209(c) extends the reach of the courts to any non-resident defendant as long as the assertion of jurisdiction comports with due process requirements. Defendant contends that § 2–209(c) allows jurisdiction only if an affirmative enabling provision providing for the exercise of personal jurisdiction is made part of the state or federal constitution. Assuming plaintiff's reading of the statute is correct, defendant also argues that the exercise of personal jurisdiction over defendant would violate defendant's due process rights.

■ The Seventh Circuit Court of Appeals has stated that § 2–209(c) is coextensive with due process. *FMC Corporation v. Varonos*, 892 F.2d 1308, 1310 n. 5 (7th Cir.1990). Although the issue raised here did not arise in *FMC Corporation*,[4] this Court agrees with the Seventh Circuit that the Illinois legislature intended to make its

---

1. The Illinois long-arm statute, until recently, stated that a non-resident defendant was subject to the jurisdiction of the Illinois state courts regarding any cause of action arising from the following acts: 1) "the transaction of any business within this State;" 2) "the commission of a tortious act within this State;" 3) "the ownership, use, or possession of any real estate situated in this State;" 4) "contracting to insure any person, property or risk located within this State at the time of contracting;" or 5) "with respect to actions of dissolution of marriage and legal separation, the maintenance in this State of a matrimonial domicile at the time this cause of action arose or the commission in this State of any act giving rise to the cause of action." Ill.Rev.Stat. ch. 110, § 2–209 (1987).

2. In *Cook*, the Illinois Supreme Court stated that the Illinois long-arm statute was not coextensive with due process. *Cook*, 87 Ill.2d at 197, 57 Ill.Dec. at 733, 429 N.E.2d at 850.

3. States utilize three types of long-arm statutes. Some statutes provide that the exercise of personal jurisdiction is appropriate as long as it meets the due process requirements of the United States Constitution. Other states have statutes similar to that of Illinois before it was amended, which provide for personal jurisdiction only if the conduct falls within one of the enumerated categories of the statute. The third type of long-arm statute, the hybrid, contains both a number of enumerated bases for the exercise of jurisdiction as well as a catchall provision allowing jurisdiction as long as it is not inconsistent with state or federal constitutions. The amended Illinois long-arm statute is of the hybrid variety.

4. The defendant in *FMC Corporation* did not contest the meaning of § 2–209(c) because the amended statute went into effect after the suit was filed and thus was inapplicable to the defendant.

long-arm statute coextensive with due process.[5]

Section 2–209(c) is closely modeled on the hybrid long-arm statutes of other states.[6] Those statutes have all been interpreted as providing for personal jurisdiction coextensive with the due process requirements of the United States Constitution.[7] For example, the Oklahoma catchall provision allows Oklahoma courts to exercise jurisdiction on any basis not inconsistent with the Oklahoma or United States constitutions. Okla. Stat. tit. 12, § 2004(F). The Tenth Circuit has interpreted this provision as allowing assertion of personal jurisdiction coextensive with due process requirements, concluding that the language of § 2004(F) makes the question of a non-resident defendant's amenability to jurisdiction a question of federal law. *First City Bank v. Air Capitol Aircraft Sales*, 820 F.2d 1127 (10th Cir.1987). Based on *International Shoe*

*Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, the court found that federal law permits the exercise of jurisdiction as long as there exist minimum contacts between the defendant and the forum state so as to comport with due process. *First City Bank*, 820 F.2d at 820–21.

When a state adopts the statute of another state, it is presumed that the judicial construction of the borrowed statute is adopted along with the statute and treated as incorporated therein unless the adopting legislature indicates a different intent. *United States v. Aguon*, 851 F.2d 1158, 1164 (9th Cir.1988); *Cook v. Dove*, 32 Ill.2d 109, 113, 203 N.E.2d 892, 895 (1965); *Board of Governors v. Illinois Educational Labor Relations Board*, 170 Ill.App.3d 463, 480, 524 N.E.2d 758, 767, 120 Ill.Dec. 728, 737 (4th Dist.1988). The Court pre-

**5.** The legislative history of § 2–209(c) is unpublished and unavailable.

**6.** The following states have long-arm statutes which provide for jurisdiction to the extent allowed by due process (either hybrid or solely a due process provision, *see supra* at n. 3): Ala.R. Civ.P. 4.2 permits jurisdiction so long as it is "not inconsistent with the constitution of this state or the Constitution of the United States"; Cal.Civ.Proc.Code § 410.10 permits the "exercise of jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States"; Iowa Ct.R. 56.2 permits jurisdiction as long as the non-resident defendant has the "necessary minimum contacts with the state of Iowa" and is "amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States"; Me.Rev. Stat.Ann. tit. 14, § 704–A permits jurisdiction to "the fullest extent permitted by the due process clause of the United States Constitution"; Neb. Rev.Stat. § 25–536(2) permits jurisdiction on any basis "consistent with the Constitution of the United States"; N.J.R.Civ.Prac. 4:4–4(e) permits jurisdiction on any basis "consistent with the due process of law"; Okla.Stat. tit. 12, § 2004(F) permits jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States"; Ore.R.Civ.P. 4 permits jurisdiction if "not inconsistent with the Constitution of this state or the Constitution of the United States"; 42 Pa.Cons.Stat. § 5322 permits jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States"; R.I.Gen.Laws § 9–5–33 permits jurisdiction over non-resident defen-

dants who "have the necessary minimum contacts with the state ... in every case not contrary to the provisions of the constitution or laws of the United States"; S.D.Codified Laws Ann. § 15–7–2(14) permits jurisdiction based on "the commission of any act, the basis of which is not inconsistent with the Constitution of this state or with the Constitution of the United States"; Utah Code Ann. § 78–27–22 permits jurisdiction "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution"; and Wyo.Stat. § 5–1–107 permits jurisdiction "on any basis not inconsistent with the Wyoming or United States constitution."

**7.** *See,* in alphabetical order by state, *Desotacho, Inc. v. Valnit Industries, Inc.,* 350 So.2d 447 (Ala.1977); *Walker v. University Books, Inc.,* 382 F.Supp. 126 (N.D.Cal.1974); *Larsen v. Scholl,* 296 N.W.2d 785 (Iowa 1980); *Tyson v. Whitaker and Son, Inc.,* 407 A.2d 1 (Me.1979); *Stucky v. Stucky,* 186 Neb. 636, 185 N.W.2d 656 (1971); *Avdel Corporation v. Mecure,* 58 N.J. 264, 277 A.2d 207 (1971); *First City Bank v. Air Capitol Aircraft Sales,* 820 F.2d 1127 (10th Cir.1987) (interpreting Oklahoma statute); *State ex rel. Hydraulic Servocontrols v. Dale,* 294 Or. 381, 657 P.2d 211 (1982); *Dunnigan v. Silverthorn,* 542 F.Supp. 32 (E.D.Penn.1982); *Rhode Island Hospital Trust National Bank v. San Gabriel Hydroelectric,* 667 F.Supp. 66 (D.R.I.1987); *Austad Co. v. Pennie and Edmonds,* 823 F.2d 223 (8th Cir. 1987) (interpreting South Dakota statute); *Brown v. Carnes Corp.,* 611 P.2d 378 (Utah 1980); *Shanks v. Westland Equipment & Parts Co.,* 668 F.2d 1165 (10th Cir.1982) (interpreting Wyoming statute).

sumes that the Illinois legislature intended to adopt the judicial construction given to similar statutes in other states. Section 2–209(c) is very similar to the wording of other long-arm statutes, and the Court finds that a similar meaning was intended by the Illinois legislature. Section 2–209(c) should therefore be interpreted to permit jurisdiction to the extent presently allowed by the due process clause of the Constitution.[8]

■ Given this interpretation of § 2–209(c), the two-step inquiry generally necessary for analysis of personal jurisdiction is no longer required. If the contacts between the defendant and the State of Illinois are sufficient to satisfy the requirements of due process, then the requirements of both the Illinois long-arm statute and the United States Constitution have been met, and no other inquiry is necessary.

## IV. DUE PROCESS ANALYSIS

■ The standard for deciding whether the exercise of jurisdiction over a non-resident defendant comports with due process is whether the defendant has had sufficient minimum contacts with the forum state such that maintenance of the suit in the forum is consistent with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). The rationale underlying the requirement of minimum contacts is that the defendant must be able to foresee the possibility of being haled into a forum court given its conduct and connection with the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). Thus, the minimum contacts requirement is satisfied when the

defendant "purposefully avails itself of the privilege of conducting activities within the forum state thereby invoking the benefits and protections of the forum's laws." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183, quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). Where the dispute involves a contractual obligation, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities." *Burger King*, 471 U.S. at 473, 105 S.Ct. at 2182.

Defendant asserts that its contacts with Illinois are insufficient and that personal jurisdiction is thus improper. Defendant states that all negotiations and confirmations of the contracts were done through mail and telephone communications and that such communications are irrelevant for the purposes of determining jurisdiction. Defendant also maintains that the contracts were not performed within Illinois and that defendant could not foresee being brought into the Illinois courts. Finally, defendant notes that payments on the contracts were to be sent to Georgia.

■ Telephone and mail communications are appropriately considered in assessing the totality of the defendant's contacts with the forum state for due process purposes. *See FMC Corporation*, 892 F.2d at 1312 (7th Cir.1990); *Madison Consulting Group v. State of South Carolina*, 752 F.2d 1193, 1203 (7th Cir.1985); *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176–77 (7th Cir.1971); *Ben Kozloff*, 717 F.Supp. at 1339. Modern business transactions are often conducted primarily through interstate telephone and mail communications obviating the need for the parties to travel to the state where the busi-

---

**8.** Although § 2–209(c) is very similar to other statutes cited *supra* at n. 6, it is not identical to any of them. Defendant argues that the differences in language warrant a different interpretation. *Cf. Board of Governors*, 170 Ill.App.3d at 480, 524 N.E.2d at 767–68, 120 Ill.Dec. at 738 (dissimilarities between statute of an adopting state and statute used as model indicate intent to achieve a different outcome). The Court

does not view the minor differences in § 2–209(c) as significant. The language "any other basis now or hereafter permitted" in § 2–209(c) may simply be intended to allow a court's jurisdiction to expand or contract if the analysis under due process changes or if there is ever language added to the state or federal constitution enlarging or restricting the assertion of personal jurisdiction.

ness is being conducted. *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. Furthermore, these interstate communications, when initiated by a non-resident defendant, indicate that the defendant purposefully availed itself of the privilege of doing business in the forum state. *See Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184.

To determine whether a defendant in a breach of contract case purposefully established minimum contacts with the forum state, a court should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185. In the instant case, defendant initiated both contracts by placing telephone calls to plaintiff, and further negotiations occurred through mail or telephone correspondence. In addition, some contract negotiation and partial performance occurred in Illinois. Defendant's representatives came into Illinois to meet with plaintiff at its Illinois office to discuss defendant's failure to pay for the equipment under the first contract. Defendant contends that this visit is peripheral to the contract's formation and is irrelevant. The Court does not find the visit to be irrelevant to either the contract's formation or to the issue of whether the defendant had minimum contacts with Illinois. Defendant's visit was an integral aspect of performance of the contract because it concerned defendant's obligation to pay under the contract. The visit indicates that defendant knew it was dealing with plaintiff primarily through its Illinois office. Thus, defendant could foresee the possibility of suit in Illinois. In addition, before the second contract could be commenced, defendant was required to send an advance payment of fifteen thousand dollars to the plaintiff's Illinois office. This payment was central to the second contract, because it is unlikely that the contract would have been formed without it.

Moreover, affidavits submitted by plaintiff assert that plaintiff sent acknowledgments of the orders from its Illinois office to defendant for defendant to sign and return to the Illinois office. Defendant maintains that these acknowledgments were not a part of the contract formation because they were usually sent to defendant along with invoices for the equipment ordered and thus were executed after the contracts had already been formed. However, defendant did not submit affidavits in support of these factual assertions. Therefore, the Court must accept plaintiff's version as true despite contrary averments in defendant's pleadings. *Wessel Co. v. Yoffee & Beitman Management*, 457 F.Supp. 939, 940 (N.D.Ill.1978). The Court finds that the acknowledgments were returned to Illinois. *See Int'l Merchandising v. Lighting Systems*, 64 Ill.App.3d 346, 352, 380 N.E.2d 1047, 1052, 20 Ill.Dec. 838, 842 (1st Dist.1978).

Given defendant's contacts with Illinois, the Court cannot find that the assertion of jurisdiction was the result of fortuitous or random contacts. *See Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. Rather, defendant's activities show that it purposefully reached out to do business with plaintiff through its Illinois office, thereby creating a substantial connection with the forum. *See Burger King*, 471 U.S. at 475–76, 105 S.Ct. at 2184.[9]

Defendant, by its visit to Illinois, its partial payment to Illinois, and its telephone and mail communications to the Illinois office created a substantial and continuing connection with Illinois such that the maintenance of the suit in Illinois does not offend the minimum contacts requirements of due process. Where, as here, a dispute arose out of "a contract which had a substantial connection with that State" the ex-

---

**9.** Because the Court finds that jurisdiction is proper pursuant to § 2–209(c), it does not reach the question of whether jurisdiction would also be supported under the "transaction of business" provision of § 2–209(a)(1). However, the Court notes that the activities of defendant which support jurisdiction under the due pro-

cess analysis are also relevant in establishing an intent to affect Illinois business interests, which would support jurisdiction under § 2–209(a)(1). *See FMC Corporation*, 892 F.2d at 1312–13; *Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341, 346 n. 8 (N.D.Ill.1984); *Ben Kozloff*, 717 F.Supp. at 1338.

ercise of jurisdiction comports with due process. *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2186. Defendant's substantial connection with the forum is further underscored by its three-year business relationship, prior to this dispute, with the plaintiff through its Illinois office. Because the requirements of due process are satisfied, jurisdiction is proper under both § 2–209(c) and the United States Constitution.

## IV. CONCLUSION

Defendant's activities in Illinois are sufficient to warrant exercise of jurisdiction over defendant based on § 2–209(c) of the Illinois long-arm statute. Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) is therefore denied.