A07A2078. VIBRATECH, INC. v. FROST et al.
(661 SE2d 185)

ADAMS, Judge.
Vibratech, Inc. appeals from the trial court's denial of its motion to dismiss and its motion to open default in this action involving five

consolidated aviation wrongful death cases and one aviation property case. For the reasons cited below, we affirm.

This lawsuit arises out of the crash of a Cessna twin engine aircraft in the vicinity of Apison, Tennessee, on December 2, 2004, resulting in the death of the pilot and four passengers. The aircraft was owned by the Georgia Cumberland Conference of Seventh-Day Adventists (GCCSA). The GCCSA and the estates of the five decedents filed these lawsuits in Gwinnett County against multiple defendants including Vibratech. The plaintiffs allege that Vibratech negligently manufactured the plane's viscous damper, a mechanism designed to reduce engine vibration, which was installed in the aircraft's left engine.

Vibratech was a Delaware corporation with its principal place of business in Alden, New York, but is now defunct, with no officers, directors or employees. The corporation filed for bankruptcy protection on July 18, 2003, approximately 18 months before the accident. The company never maintained a certificate of authority to conduct business in the State of Georgia and did not carry out business operations in the state. Vibratech sold the damper at issue in this case to Teledyne Continental Motors, Inc. (TCM), a Delaware company with its principal place of business in Mobile, Alabama. Vibratech sold the damper "FOB Seller's Plant" in Alden, New York, and TCM installed the damper in a rebuilt Cessna engine. The GCCSA purchased the engine through Air Power, Inc., a third-party Texas company, on April 9, 2001. TCM shipped the engine at Air Power's instruction to L & M Aircraft in Rome, Georgia, for installation in GCCSA's airplane.

On December 2, 2005, the plaintiffs served their lawsuits on CT Corporation, Vibratech's registered agent in Delaware. Although CT had previously notified Vibratech that it was discontinuing service for nonpayment, it accepted service in this case, after checking its own databases to determine if it was Vibratech's registered agent. CT forwarded the service documents to Ross M. Posner at Ridge Capital Corporation, the last contact Vibratech had provided. Only after this service did CT submit a resignation as the registered agent to the Delaware and New York secretaries of state. Ridge Capital returned the documents to CT, explaining that Vibratech was in bankruptcy and that Ridge Capital was no longer involved with the manufacturer. CT then returned the service papers to the clerk of the trial court, copying plaintiffs' counsel on the transmittal letter stating that its statutory representation services for Vibratech had been discontinued. Although aware that Vibratech had filed bankruptcy proceedings, plaintiffs did not attempt service on the bankruptcy trustee.

Vibratech did not file an answer within 30 days of the December 2, 2005 service. In the meantime, on January 6, 2006, several of the plaintiffs moved to amend their complaint, asserting the fact of Vibratech's bankruptcy, that they had received relief from the bankruptcy, and they sought to re-serve Vibratech. CT rejected a second attempt at service, and the plaintiffs served the Delaware Secretary of State on January 12, 2006.

Although Vibratech is defunct, the corporation is listed as an additional insured on a policy held by TCM. This policy was issued on January 19, 2005, more than 18 months after Vibratech's bankruptcy and over a month after the crash, but it provides coverage for events occurring from June 1, 2004 to June 1, 2005, which included the date of the crash here. At some point, TCM began providing a defense to Vibratech, and on February 27, 2006, Vibratech moved to open default as of right. The plaintiffs then moved for entry of default judgment, and Vibratech filed a motion to open default, along with a separate motion to dismiss the lawsuits. The trial court denied the company's motions, and this Court granted Vibratech's application for interlocutory appeal to consider these rulings.

1. *Motion to Dismiss*

Vibratech moved to dismiss asserting (1) lack of personal jurisdiction, (2) insufficient service of process, and (3) a violation of the automatic stay of litigation afforded by Vibratech's bankruptcy.

(a) *Personal Jurisdiction*

"In Georgia, a defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction." (Footnote omitted.) *Home Depot Supply v. Hunter Mgmt.*, 289 Ga. App. 286 (656 SE2d 898) (2008). Where the motion was decided upon written submissions "any disputes of fact in the written submissions supporting and opposing the motion to dismiss are resolved in favor of the party asserting the existence of personal jurisdiction, and the appellate standard of review is nondeferential." (Punctuation and footnotes omitted.) Id.

Vibratech argued that the trial court lacked personal jurisdiction over it because the company never transacted any business in the State of Georgia, in that it had no office, took no orders, made no sales, delivered no products and solicited no business here. In rejecting this argument, the trial court found that in *Innovative Clinical & Consulting Svcs. v. First Nat. Bank &c.*, 279 Ga. 672 (620 SE2d 352) (2005), the Supreme Court of Georgia construed subsection (1) of the Georgia long-arm statute to extend jurisdiction to the maximum limits permitted by procedural due process. OCGA § 9-10-91 (1). The trial court determined that Vibratech's activities in placing its dampers into the stream of commerce by manufacturing, selling and delivering them for resale were sufficient to satisfy the

requirements of due process and to confer jurisdiction over the company. Vibratech counters, however, even under *Innovative Clinical*'s expanded interpretation of subsection (1), the language of the statute requires more than merely putting merchandise into the stream of commerce; it still requires the actual transaction of business by the defendant in Georgia.

In *Innovative Clinical*, our Supreme Court reaffirmed its prior holding in *Gust v. Flint*, 257 Ga. 129 (356 SE2d 513) (1987) that "the rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." (Citation and punctuation omitted.) *Innovative Clinical*, 279 Ga. at 673. But the court stated that prior cases had "unduly limited the literal language" of the long-arm statute. Id. Addressing subsection (1), the court observed that nothing in the subsection's language requires the defendant's physical presence in Georgia or minimizes the importance of a nonresident's intangible contacts with the state. Id. at 675. Rather, the language of OCGA § 9-10-91 (1) must be construed as reaching "to the maximum extent permitted by procedural due process." (Citations and punctuation omitted.) Id.

Even prior to this clarification, Georgia courts found long-arm jurisdiction under subsection (1) premised upon a stream of commerce analysis. The Supreme Court held that putting merchandise into the stream of Georgia commerce for delivery in the state under an agreement to indemnify its purchaser for damages amounted to transacting business in the state under subsection (1). *J. C. Penney Co. v. Malouf Co.*, 230 Ga. 140, 143 (196 SE2d 145) (1973). And in *Patron Aviation v. Teledyne Indus.*, 154 Ga. App. 13 (267 SE2d 274) (1980), this Court considered an aviation case involving some of the same parties present here. In *Patron*, L & M sold an airplane engine to a Georgia resident. TCM built the engine and shipped it to L & M in Georgia for installation into the purchaser's plane. The purchaser sued TCM when a dispute arose concerning the condition of the engine, and TCM contested jurisdiction. Id. This Court found that the manufacturer transacted business in Georgia when it sent the engine knowing it would be placed into the stream of Georgia commerce. Id. at 14 (1). Thus, it is clear that jurisdiction exists over TCM in this case.

But our appellate courts have not considered the application of subsection (1) to the specific factual situation before us, where the manufacturer of an aviation component ships to an intermediary like TCM, who installs the part into an aviation engine and then ships the engine into Georgia. But at least three other courts considering the issue found jurisdiction on such facts under varying jurisdictional statutes. *Petroleum Helicopters v. Avco Corp.*, 834 F2d 510 (5th

Cir. 1987); *State ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Ore. 381 (657 P2d 211) (1982); *Bach v. McDonnell Douglas, Inc.*, 468 FSupp. 521 (D. Ariz. 1979). As to our long-arm statute, *Innovative Clinical* clarified that direct contacts are not required to establish jurisdiction. Thus, we cannot limit our analysis to a strictly literal reading of the subsection's language, but must consider Vibratech's intangible contacts with the state in determining whether the company transacted any business, subject to the limits of due process.

This requires that we follow a three-prong analysis:

> In considering whether a Georgia court may exercise jurisdiction over a nonresident based on the transaction of business, we apply a three-part test: Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

(Footnote omitted.) *Aero Toy Store v. Grieves*, 279 Ga. App. 515, 517-518 (1) (631 SE2d 734) (2006). We use the first two prongs of this test to determine whether Vibratech established· the minimum contacts necessary for exercising jurisdiction. If we determine that sufficient minimum contacts exist, then we must evaluate other factors to determine the reasonableness of exercising jurisdiction in Georgia, including:

> the burden on the defendant, the forum state's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution to controversies, and the shared interest of the states in furthering substantive social policies.

(Footnote omitted.) Id. at 518 (1). Thus courts have determined that under due process "it is not unfair to require a corporation to respond to a suit in a state from which it derives the benefits and privileges of conducting business." *Showa Denko K.K. v. Pangle*, 202 Ga. App. 245, 247 (2) (414 SE2d 658) (1991).

In *Showa Denko,* this Court applied a due process analysis to determine whether sufficient minimum contacts existed to extend jurisdiction under subsection (2) of the long-arm statute over a

138

Japanese manufacturer of amino acids.[1] The manufacturer shipped its product to several out-of-state U. S. manufacturers for inclusion in nutritional supplements, which were in turn distributed on a nationwide basis, including deliveries in Georgia. *Showa Denko v. Pangle*, 202 Ga. App. at 247. The court determined that "[w]hether the introduction of a product into the stream of commerce establishes minimum contacts with a state in which the product is ultimately sold depends on the foreseeability that the product would be sold there." Id. at 247-248 (2). The requisite foreseeability is "not the mere likelihood that [the] product will find its way into the forum State," but whether "the defendant's conduct and connection within the forum State are such that he should reasonably anticipate being haled into court there." (Punctuation omitted.) Id. at 248 (2), quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 297 (100 SC 559, 62 LE2d 490) (1980). This Court found that by marketing its product on a nationwide basis for ultimate delivery in all 50 states, Showa Denko should reasonably have anticipated being haled into court in Georgia. *Showa Denko v. Pangle*, 202 Ga. App. at 248. As the Court noted, "[w]here the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this state." (Citation and punctuation omitted.) Id.

The holding in *Showa Denko* rests firmly upon the authority of *World-Wide Volkswagen Corp. v. Woodson*, in which the U. S. Supreme Court stated:

> [I]f the sale of a product of a manufacturer . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer . . . to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

---

[1] Although *Showa Denko* determined that subsection (1) did not apply to the facts of that case, the decision was rendered before *Innovative Clinical*. In any event, the due process analysis employed in *Showa Denko* has equal application to subsection (1). See *Behar v. Aero Med Intl.*, 185 Ga. App. 845, 849 (366 SE2d 223) (1988) (all subsections of long-arm statute require a showing of minimum contacts).

444 U. S. at 297-298 (III).

The shipment of the damper in this case was not an isolated transaction. Evidence in the file indicates that Vibratech and TCM had a longstanding business arrangement. The two parties apparently entered into a supply contract, under which Vibratech sold as many as several hundred dampers per year to TCM for incorporation into its airplane engines.[2] In addition, the two parties entered into a side agreement in which TCM agreed to indemnify Vibratech and to carry the company as an additional insured on an aviation liability policy. The certification of insurance to Vibratech under this agreement indicates that the geographical limit of the coverage is "Worldwide."

From the facts in this case, we can conclude that Vibratech shipped its products to TCM with the expectation that it would be installed in Cessna engines for re-sale to other locales across the country, including Georgia. Accordingly, although Vibratech did not conduct any sales activities in Georgia itself, "its business has been directly affected by sales transactions occurring here. To that extent, it has benefited from the protection which our laws have given to the marketing of Cessna aircraft containing its [dampers]." (Citation omitted.) *State ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Ore. at 389 (finding jurisdiction under almost identical facts). Vibratech's actions in selling a product to TCM in Alabama with the intention of deriving an economic benefit from its sale in other states, were purposeful actions which should have led Vibratech to reasonably anticipate being haled into court in those states, especially a border state such as Georgia. As this activity was directly connected to the cause of action in this case,[3] the requisite minimum contacts are established. Therefore,

> [w]e are convinced that when the "transacting any business" language is read to extend to the limits of due process, it encompasses a case like the present one where a nonresident defendant ships goods to an intermediary with the

---

[2] Moreover, we note that an aircraft engine by its very nature is "inherently appropriate" for interstate travel. *Jet America v. Gates Learjet Corp.*, 145 Ga. App. 258, 260 (1) (243 SE2d 584) (1978), overturned on other grounds, *Executive Jet Sales v. Jet America*, 242 Ga. 307 (248 SE2d 676) (1978).

[3] The fact that the accident occurred in Tennessee, not Georgia, does not affect this analysis. Unlike the language in subsections (2) and (3), nothing in the language of subsection (1) requires that the tortious act, omission or injury occur in this state. See also *State ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Ore. at 390. Compare *Pratt & Whitney Canada, Inc. v. Sanders*, 218 Ga. App. 1 (460 SE2d 94) (1995) (pre-*Innovative Clinical* case found no jurisdiction where plaintiffs were nonresidents, accident occurred outside state, corporation not authorized to transact business and had no employees, officers or registered agent in state).

expectation that the intermediary will distribute the goods [to] a region that includes [Georgia].

(Citation omitted.) *McDaniel v. Armstrong World Indus.*, 603 FSupp. 1337, 1341 (D.C. 1985).

Turning to the third prong of the due process test, we must consider whether the exercise of jurisdiction by the trial court will offend traditional fairness and substantial justice. Three of the plaintiffs in this consolidated matter are residents of Georgia, and the other three are residents of surrounding states.[4] "Certainly, Georgia has an interest in providing an effective means of redress for citizens whose health and welfare have been injured by defective products which our commercial laws permit to be imported into the state." *Showa Denko v. Pangle*, 202 Ga. App. at 250 (2). And it would place an undue burden upon the plaintiffs to pursue a separate action against Vibratech in another state such as New York or Delaware. "[I]t would be no less burdensome for [Vibratech] to defend a separate action in New York than to defend this action in Georgia where all other issues and the alleged joint tortfeasors may be joined." (Footnote omitted.) Id. at 250-251 (2). This is especially true as Vibratech is a defunct corporation, with no officers, directors or employees, and it has local counsel to represent it in this action. Thus, judicial economy and efficiency are served by extending jurisdiction over Vibratech in this case.

Accordingly, we find no error in the trial court's denial of Vibratech's motion to dismiss for lack of personal jurisdiction.

(b) *Service of Process*

The trial court also rejected Vibratech's motion on the ground of insufficient service of process. This Court will uphold a trial court's ruling on a motion to dismiss a complaint for insufficient service of process absent a showing of an abuse of discretion. *Woodyard v. Jones*, 285 Ga. App. 323 (646 SE2d 306) (2007). "Factual disputes regarding service are to be resolved by the trial court, and the court's findings will be upheld if there is *any evidence* to support them." (Citation and punctuation omitted; emphasis in original.) Id. The trial court found that the December 2, 2005 service was proper based, in large part, upon the fact that Vibratech took no steps to have CT withdraw as its registered agent. The trial court found that service of process comported with Georgia and Delaware law and thus was valid.

"OCGA § 9-10-94 directs that foreign corporations not registered to do business but nonetheless subject to Georgia's long-arm

---

[4] The other three plaintiffs are residents of states bordering Georgia and have submitted to jurisdiction here.

jurisdiction 'may be served with a summons outside the state in the same manner as service is made within the state. . . .' " *Rovema Verpackungsmaschinen, GmbH v. Deloach*, 232 Ga. App. 212, 213 (500 SE2d 647) (1998).[5] Delaware corporations, like Georgia corporations, are required to have designated agents for service of process, and service may be achieved by delivering a copy personally to such registered agent. 8 Del. Code Ann. §§ 131-132, 321. Thus service upon Vibratech's registered agent for service of process would be appropriate under both Delaware and Georgia law. OCGA §§ 9-11-4 (e) (1), (7); 14-2-501 (2). Compare *Todd v. Harnischfeger Corp.*, 177 Ga. App. 356, 357 (340 SE2d 22) (1985) (service upon registered agent in foreign state improper where corporation maintains registered agent in Georgia).

Vibratech contends, however, that service upon CT Corporation was invalid under *Due West Assoc. v. Renfroe Mining & Grading Co.*, 194 Ga. App. 397 (391 SE2d 13) (1990). The plaintiff in that case served a former corporate officer, who was still listed as an officer on the Georgia Secretary of State's database, based upon the corporation's annual report. The Court ruled that while the former officer may have held his position at the time of the corporate filing, the evidence did not support the trial court's finding that this also demonstrated he was still an officer at the time of service. Id. This Court further found that the evidence failed to support the trial court's finding that the former officer represented that he was an officer and accepted service. The evidence showed instead that he had resigned from the corporation prior to service, and, in fact, was employed at another corporation. Id. Thus, service upon the former officer was invalid.

Here, CT was listed as Vibratech's agent for service of process with the Delaware Secretary of State, and under Delaware law, any resignation from that position must be filed with the Secretary of State. 8 Del. Code Ann. §§ 135, 136. While a corporate officer may resign his position by informing the corporation, CT's correspondence notifying Vibratech it was withdrawing its services was insufficient under the law to effect its resignation as its designated corporate agent. It is undisputed that CT made no attempt to resign with the Secretary of State until after plaintiffs served their summonses and complaints in this case. Moreover, CT checked its own

---

[5] OCGA § 14-2-504 also provides that a foreign corporation without a registered agent in Georgia may be served by registered or certified mail or statutory overnight delivery, addressed to a specified corporate officer at the corporation's principal office. But that statute specifically states that it "does not prescribe the only means, or necessarily the required means, of serving a corporation." OCGA § 14-2-504 (c). Accordingly, nothing in this statute affects the validity of service in accordance with OCGA § 9-10-94.

database in an attempt to confirm its representation and decided to accept service based upon that review. Thus *Due West* is inapposite.

Nevertheless, Vibratech contends that no service was effected because neither the corporation nor the bankruptcy trustee ever received actual notice of the complaint. But under Georgia law service does not necessarily require actual notice to a defendant. See, e.g., OCGA §§ 9-11-4 (f) (1) (service by publication); 14-2-504 (b) (3) (service automatically perfected within five days of proper mailing). In this case, the trial court found that Vibratech's failure to receive actual notice was due to the corporation's own failure, or that of its bankruptcy trustee, to take the requisite steps to alter its registered agent or to otherwise insure that service would be forwarded to the trustee, or some other appropriate person. Compare *Charming Shoppes of Delaware v. Parrish*, 214 Ga. App. 729, 730 (448 SE2d 781) (1994) (service not perfected where wrong corporate entity served due to plaintiff's lack of diligence).

We cannot say that the trial court abused its discretion in denying Vibratech's motion to dismiss on this ground. See generally *S. Donald Norton Properties v. Triangle Pacific*, 253 Ga. 761 (325 SE2d 160) (1985) (corporation has the responsibility of keeping up with its registered agent).

(c) *Bankruptcy Stay*

Vibratech also sought dismissal on the ground that the lawsuits were void ab initio because they violated the automatic bankruptcy stay. The trial court determined that the claims in this case did not fall within the automatic stay under 11 USC § 362.[6] We agree.

The accident occurred 18 months after Vibratech filed for bankruptcy, and the issue arises as to whether the claims in this case must be considered as pre-petition or post-petition claims. A post-petition tort may not give rise to a claim against the bankruptcy estate in a Chapter 7 proceeding such as Vibratech's. *In re Rousselle*, 259 B.R. 409 (M.D. Fla. 2001); 11 USC § 362 (a) (1), (3), (6). Vibratech urges that the claims in this case must be considered pre-petition claims under the authority of *Epstein v. Official Committee of Unsecured Creditors of Estate of Piper Aircraft Corp.*, 58 F3d 1573 (11th Cir. 1995). Under that case, a claim is considered pre-petition if

> (i) events occurring before confirmation create a relationship, such as contact, exposure, impact, or privity, between the claimant and the debtor's product; and (ii) the basis for liability is the debtor's prepetition conduct in designing,

---

[6] State courts have concurrent jurisdiction with bankruptcy courts to determine the applicability of an automatic stay. *In re Pope*, 209 B.R. 1015, 1020 (Bankr. N.D. Ga. 1997).

manufacturing and selling the allegedly defective or dangerous product.

Id. at 1577 (II) (B). Even assuming, without deciding, that the claims in this case could be considered pre-petition bankruptcy claims, the automatic stay does not apply to bar the plaintiff's recovery in this case.

The primary asset at issue is the insurance policy owned by TCM. It is not owned by Vibratech and thus is not an asset protected by the automatic stay. Vibratech asserts, however, that the side agreement established a separate right to indemnification by TCM, which was a pre-petition asset subject to the stay. But the indemnification under that side agreement was co-extensive with the insurance policy obtained by TCM under the terms of the agreement. Moreover, the side agreement remained in effect only so long as Vibratech accepted orders to supply dampers to TCM. Vibratech is a defunct corporation, and there is no evidence that it was continuing to accept orders at the time of the bankruptcy filing. In fact, the evidence indicates that the company sold most of its assets in May 2003. Thus no contractual right existed at the time of the bankruptcy. Rather, because the insurance policy at issue was acquired after the side agreement expired on its own terms and after Vibratech filed for bankruptcy, it was not subject to the automatic stay. See generally *In re Plexus Enterprise*, 289 B.R. 778, 779 (M.D. Fla. 2002) (contract entered into post-petition not subject to stay). See also *In re Edgeworth*, 993 F2d 51, 55 (5th Cir. 1993); *In re Scott Wetzel Svcs.*, 243 B.R. 802 (M.D. Fla. 1999) (holding proceeds of liability policy not subject to automatic stay). Accordingly, the complaint against Vibratech was not void ab initio.[7]

Our analysis is not altered by the fact that the plaintiffs in this case sought relief from the automatic stay, yet filed their complaints before receiving such relief. As we have found that the stay was not applicable to their claims, no such relief was required. And nothing in their actions in seeking the relief or in their pleadings in this case arise to the level of an admission or a waiver of this issue. Further,

---

[7] Vibratech argues that the complaint was not limited to recovery under the insurance policy, but rather sought to recover any assets of Vibratech in violation of the automatic stay. Pretermitting whether any other such claims exist, this argument would not render the complaint itself void ab initio because it clearly asserted valid claims for assets not subject to the automatic stay. Thus Vibratech is bound by the filing and service of the original complaint. Moreover, plaintiffs sought relief from the stay before filing and were granted such relief "to the extent necessary" six days after filing the complaint; a subsequent amendment reasserted these claims. Under these circumstances, the policies underlying bankruptcy protection were not violated.

Vibratech did not oppose the plaintiffs' motion to lift the stay, and the bankruptcy court ultimately granted such relief.

Accordingly, we find no error in the trial court's denial of Vibratech's motion to dismiss on this ground.

2. *Motion to Open Default*

Vibratech argues that the trial court erred in refusing to open default. OCGA § 9-11-55 (b) provides that a default may be opened on one of three grounds where four conditions are met. The three grounds are (1) providential cause, (2) excusable neglect, and (3) proper case. The four conditions are the defendant's (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense. *Butterworth v. Safelite Glass Corp.*, 287 Ga. App. 848, 849 (1) (652 SE2d 877) (2007). The decision whether to open a default on one of the three grounds rests within the sound discretion of the trial court. *Wright v. Mann*, 271 Ga. App. 832 (611 SE2d 118) (2005). And in reviewing the trial court's order on the motion, we must "determine whether all the conditions set forth in OCGA § 9-11-55 have been met and, if so, whether the trial court abused its discretion based on the facts peculiar to each case." (Footnote omitted.) Id. It is undisputed that Vibratech met the four required conditions, and Vibratech asserts that the trial court abused its discretion in denying its motion to open default.

Vibratech first argues that the answer and motion to open default filed on February 27, 2006 were timely because they were filed within 45 days of service of the parties' amended complaint on January 12, 2006. Therefore, the trial court should have opened default as of right under OCGA § 9-11-55. Vibratech relies upon *McBee v. Benjamin*, 272 Ga. App. 567, 568 (612 SE2d 802) (2005), for the proposition that the date a case goes into default is calculated from the service of the amended complaint should the amended complaint be served prior to the filing of a responsive pleading to the initial complaint. But we do not read *McBee* as supporting Vibratech's argument, and note that the Court in that case affirmed the trial court's denial of McBee's motion to open default. Id. Moreover, this Court has held that a defendant's failure to timely answer an original complaint, even if he answers an amended complaint, puts the case into default. *Day v. Norman*, 207 Ga. App. 37 (1) (427 SE2d 31) (1993).

Vibratech further contends that it has made out a proper case for opening default. As Vibratech notes,

> the rule permitting opening of default is remedial in nature and should be liberally applied, for default judgment is a drastic sanction that should be invoked only in extreme

situations. Whenever possible cases should be decided on their merits for default judgment is not favored in law.

(Citation omitted.) *Patterson v. Bristol Timber Co.*, 286 Ga. App. 423, 429 (2) (c) (649 SE2d 795) (2007). And this Court has recognized a number of factors for determining whether opening default would be appropriate in a particular case, including:

> whether and how the opposing party will be prejudiced by opening the default; whether the opposing party elected not to raise the default issue until after the time under OCGA § 9-11-55 (a) had expired for the defaulting party to open default as a matter of right; and whether the defaulting party acted promptly to open the default upon learning no answer had been either filed or timely filed. Further, any additional delay occasioned by a failure to file promptly for opening default upon its discovery can be considered in determining whether defendants' neglect was excusable.

(Citation and punctuation omitted.) *Ford v. Saint Francis Hosp.*, 227 Ga. App. 823, 826 (1) (490 SE2d 415) (1997). Although the trial court found that each of these factors would weigh in favor of opening the default in this case, the court exercised its discretion to deny the motion on the ground of "Vibratech's negligent and inexcusable failure to keep up with its registered agent," and "TCM's inexplicable failure to recognize that it had a duty to defend this very lawsuit on behalf of Vibratech."

We have found that Vibratech's failure to receive timely notice of the lawsuit is imputable to its own failure to properly advise authorities of its changed status and the withdrawal of its registered agent. In addition, the trial court noted that TCM had actual notice of these claims in December 2005, and plaintiffs filed a discovery request that month for TCM to produce a copy of the insurance policy. Although there was evidence that TCM had confirmed the existence of this policy and had notice of the side agreement by February 2006, the policy was not produced to plaintiffs until April 19, 2006. While lawyers for TCM undertook to file an answer on behalf of Vibratech on February 27, their motion to open default as of right was untimely, as the last date for filing such motion would have been January 16, 2006. The TCM attorneys, who undertook to act for Vibratech, failed to move to open the default judgment until three months later, on May 22, 2006, which was five months after the initial service. The trial court found that Vibratech failed to provide a reasonable excuse for these delays and accordingly exercised its discretion to deny the motions.

Although we are aware that default is a harsh remedy and facts of this case are complicated, we cannot say that the trial court abused its discretion. It was not an abuse of discretion to charge Vibratech with TCM's failure to properly act once they undertook to defend Vibratech in this lawsuit, as TCM is the only party who has undertaken any defense on Vibratech's behalf. And both TCM and Vibratech have failed to provide a reasonable excuse for failing in a timely fashion to move to open default. Accordingly, we affirm the trial court's denial of Vibratech's motion. See, e.g., *Broadcast Concepts v. Optimus Financial Svcs.*, 274 Ga. App. 632, 634 (1) (618 SE2d 612) (2005) (no abuse of discretion where defendant waited over a month, without reasonable excuse, to move to open default).

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 27, 2008 —
RECONSIDERATION DENIED APRIL 14, 2008

*King & Spalding, Eric M. Wachter, Chilton D. Varner*, for appellant.

*Scherffius, Ballard, Still & Ayres, Andrew M. Scherffius III, Tamara M. Ayres, Segal, Fryer, Shuster & Lester, Keith E. Fryer, Charles I. Pollack, McKenna, Long & Aldridge, Charles K. Reed, Jonathan R. Friedman, Stites & Harbison, Donald R. Anderson, Paul T. Carroll III*, for appellees.

