DA 08-0090

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 29

PATRICIA M. BUNCH, individually and as personal representative of the ESTATE OF JEFFREY BUNCH, and as legal guardian of PAYTON K. BUNCH, a minor,

        Plaintiffs and Appellants,

    v.

LANCAIR INTERNATIONAL, INC., an Oregon corporation; NEICO AVIATION, INC., an Oregon corporation; LANCE A. NEIBAUER and JANE DOE NEIBAUER, husband and wife, and the marital community composed thereof; ORIN RIDDELL and JANE DOE RIDDELL, husband and wife, and the marital community composed thereof; TELEDYNE CONTINENTAL MOTORS, INC., a Delaware corporation; DUKES, INC., a California corporation; and JOHN DOES 1-10,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. 2005-674
                Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Monte D. Beck, Jory C. Ruggiero, Beck, Amsden & Ruggiero, PLLC, Bozeman, Montana

                Jeffrey D. Laveson, Carney Badley Spellman, P.S., Seattle, Washington

        For Appellees Lancair International, Inc. and Neico Aviation, Inc.:

                Steven W. Reida, Alexander L. Roots, Landoe, Brown, Planalp & Reida, Bozeman, Montana

        For Appellees Neibauer and Riddell:

                John H. Tarlow, Margaret C. Weamer, Tarlow, Stonecipher & Steele, PLLC, Bozeman, Montana

For Appellees Teledyne Continental Motors, Inc.:

Neil G. Westesen, Matthew F. McLean, Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., Bozeman, Montana

For Appellee Dukes, Inc.:

Guy W. Rogers, Brown Law Firm, Bozeman, Montana

_____

Submitted on Briefs:  November 19, 2008

Decided:  February 3, 2009

Filed:

_____
Clerk

2

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Patricia M. Bunch appeals the dismissal of her complaint in the Eighteenth Judicial District Court against Lancair International, Inc. and Neico Aviation, Inc. (collectively Lancair), Teledyne Continental Motors, Inc. (Teledyne), Lance and Jane Doe Neibauer (Neibauers), and Orin and Jane Doe Riddell (Riddells). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On September 17, 2002, Jeffrey Bunch, a licensed pilot, purchased a Lancair IV-P aircraft from defendant Orin Riddell in San Diego, California. On November 5, 2002, Jeffrey Bunch flew the Lancair IV-P aircraft from Minnesota to Montana. As he approached Gallatin Field in Bozeman, Montana, his plane lost power and he died in the resulting crash. On October 28, 2005, Patricia M. Bunch (Bunch), an Oregon resident and the wife of Jeffrey Bunch, filed a complaint in the Eighteenth Judicial District Court against the above-named appellees individually and in her capacity as the personal representative of the estate of Jeffrey Bunch and legal guardian of their daughter Payton Bunch.

¶3 The complaint filed by Bunch states claims for strict product liability, negligence, and breach of warranty against all appellees, and contains the following general allegations. Lancair is an Oregon corporation with its principal place of business in Redmond, Oregon. This corporation is engaged in the business of designing, manufacturing, and selling aircraft kits and completed aircraft. Bunch alleges Lancair designed, manufactured and sold the kit for the Lancair IV-P owned by Jeffrey Bunch. The Neibauers and Riddells are residents of Oregon. Lance Neibauer was the founder of

3

Lancair and, according to Bunch, was responsible for the design of the Lancair IV-P aircraft owned by Jeffrey Bunch. Orin Riddell was a Lancair employee whose duties included sales manager, factory test pilot, and corporate spokesman. Riddell was involved in the buying, building, and reselling of aircraft for Lancair.

¶4 Teledyne is a Delaware corporation, with its principal place of business in Mobile, Alabama. Bunch avers that Teledyne is engaged in the business of designing, manufacturing, and distributing aircraft for sale and use throughout the United States, and that Teledyne designed, built, and rebuilt the aircraft engine incorporated into the Lancair IV-P piloted by Jeffrey Bunch. Dukes is a California corporation with its principal place of business in Northbridge, California. Bunch claims that Dukes is engaged in the business of designing, manufacturing, selling and distributing fuel delivery system components for aircraft, and that it designed, manufactured, sold and/or distributed key components of the fuel delivery system used in Jeffrey Bunch's Lancair IV-P.

¶5 On December 22, 2005, Teledyne filed a motion to dismiss the complaint for lack of personal jurisdiction. On February 7, 2006, Lancair also filed a motion to dismiss for lack of personal jurisdiction. The defendants submitted affidavits demonstrating that they had no contacts with Montana, other than the fact that their products were involved in the crash which occurred here. Teledyne stated that it manufactured the engine used in Jeffrey Bunch's airplane in Alabama, and sold and shipped it to Lancair for installation in Oregon. It does not transact business in Montana, is not registered or licensed here, has no offices, employees, distributors or dealers here, nor does it have an agent or telephone listing in this state. Further, Teledyne stated in its affidavit that it does not advertise in

4

Montana, has not sold any aircraft engines to Montana residents through its website, has not shipped or sold any aircraft engines to purchasers in Montana, nor does it maintain any Montana bank accounts or pay taxes here. Similarly, Lancair averred that it does not own, use, possess or have any interest in property in Montana, does not have any employees, dealers or distributors within this state, does not advertise here, and is not registered with the Montana Secretary of State. Further, Lancair's affidavit stated that neither Jeffrey Bunch's airplane, nor any of its components, were manufactured or sold here, and further, that Jeffrey Bunch did not purchase his plane directly from Lancair.

¶6      Teledyne and Lancair argued that the mere fact that their products happened to end up in Montana was not, by itself, sufficient to subject them to personal jurisdiction given that they had no other contacts with Montana, were not residents here, and had not purposefully availed themselves of the privilege of conducting activities in this state. They argued that the exercise of personal jurisdiction in Montana would be unreasonable and would not comport with due process.

¶7      Bunch opposed the defendants' motions to dismiss. She argued that personal jurisdiction over the defendants was proper because they established the necessary minimum contacts with Montana when they distributed their products into the interstate stream of commerce. Bunch asserted that by voluntarily doing so, both defendants submitted themselves to jurisdiction in all those states where their products might cause injury. Bunch noted that there are 14 Lancair aircraft currently registered in the state of Montana. Additionally, Bunch requested the opportunity to conduct further discovery on

5

the issue of personal jurisdiction with respect to the defendants to determine the extent of their Montana contacts.

¶8      The District Court granted Lancair's and Teledyne's motions to dismiss.  We will briefly summarize the salient points underlying the District Court's decision, and discuss its reasoning and analysis in greater detail below.  The District Court began its analysis of the personal jurisdiction question by relying on *Simmons v. State,* 206 Mont. 264, 670 P.2d 1372 (1983), for the proposition that personal jurisdiction over non-resident defendants "must be assessed in the context of our federal system of government . . . [and that] we are obliged to give serious consideration to the consequences acquiring jurisdiction will have on the maintenance of harmonious relations with other states." *Simmons,* 206 Mont. at 271, 670 P.2d at 1376 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559 (1980)).  The District Court then considered whether the defendants were subject to jurisdiction under M. R.  Civ. P. 4B(1), which reads in pertinent part as follows:

> (1) Subject to jurisdiction.  All persons found within the state of Montana are subject to the jurisdiction of the courts of this state.  In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
> (a) the transaction of any business within this state;
> (b) the commission of any act which results in accrual within this state of a tort action . . . .

¶9      The District Court noted that these defendants were not "found" in Montana and that they had not transacted business here, but concluded that long-arm jurisdiction would be proper under M. R. Civ. P. 4B(1)(b) since the tort allegedly accrued in Montana.

6

Next, the District Court went on to consider whether jurisdiction over the defendants would comport with due process and with traditional notions of fair play and substantial justice. In their affidavits, the defendants submitted they had no contacts with Montana, and that their only connections to this state were due to the fortuitous, attenuated, and unilateral activity of Jeffrey Bunch. Further, the District Court noted that none of the parties were residents of Montana, whereas all the defendants were subject to personal jurisdiction in Oregon. The District Court did observe that there were known to be at least 14 Lancair airplanes in Montana, but concluded that this alone was not sufficient to demonstrate personal jurisdiction in Montana; all it demonstrated was that some of their products had ended up here. Thus, the District Court concluded that there was a presumption that asserting personal jurisdiction over these defendants would not comport with due process and would be unreasonable since they had not purposefully availed themselves of Montana law. Further, the District Court found that the defendants' forum-related conduct had not given rise to the plaintiffs' claims since their contacts with Montana were limited to the fact that they placed products into the stream of commerce which ended up in Montana. Additionally, the District Court also denied Bunch's request to conduct jurisdictional discovery, concluding that Bunch had failed to make a colorable showing of personal jurisdiction and that no further discovery regarding defendants' contacts with Montana would be allowed.

¶10 On July 3, 2006, Dukes also filed a motion to dismiss for lack of personal jurisdiction on the same grounds as Lancair and Teledyne. In its affidavit in support of its motion, Dukes' chief financial officer averred that Dukes was a California

corporation, without any real estate or property interests, business offices, warehouses, facilities, employees, agents, distributors or dealers located within this state. Further, the affidavit stated that Dukes was not registered with the Montana Secretary of State, does not pay taxes in Montana, and does not advertise here. Incorporating its previous order of dismissal with respect to Lancair and Teledyne, the District Court concluded that Dukes also had no contacts with Montana, had not purposely availed itself of Montana law, had no forum-related activities, and that personal jurisdiction over Dukes in Montana would be unreasonable. Thus, the District Court dismissed the complaint against Dukes on the same grounds as it had against Lancair and Teledyne. It also denied Bunch's request for jurisdictional discovery with respect to Dukes.

¶11    Finally, on July 27, 2007, the Neibauers and Riddells also filed a motion to dismiss for lack of personal jurisdiction. In their affidavits, these defendants all stated they had never travelled to Montana, did not own any property here, and that they did not have any business or financial ties to this state. Specifically, Orin Riddell, who sold the aircraft to Jeffrey Bunch in September 2002, stated the sale was finalized in California, and that at no time did Jeffrey Bunch discuss any intentions or plans to fly the aircraft in Montana. Again the District Court found, based on the affidavits submitted by the parties, that they had no contacts with Montana, and had not purposely availed themselves of Montana law or engaged in any forum-related activities. The District Court thus dismissed the complaint against the Neibauers and Riddells on the same grounds as it had with respect to the other defendants, and denied Bunch's request for jurisdictional discovery against these defendants as well.

8

¶12 Bunch now timely appeals the dismissal of her complaint for lack of personal jurisdiction. We restate the issues presented by Bunch as follows:

¶13 **Issue One:** *Did the District Court err in granting the defendants' motions to dismiss for lack of personal jurisdiction?*

¶14 **Issue Two:** *Did the District Court abuse its discretion by denying Bunch's motions for jurisdictional discovery?*

## STANDARD OF REVIEW

¶15 A court's determination as to its jurisdiction is a conclusion of law, which is reviewed de novo to determine whether the court's interpretation of the law is correct. *Stanley v. Lemire*, 2006 MT 304, ¶ 52, 334 Mont. 489, 148 P.3d 643. The decision whether to allow jurisdictional discovery lies within the discretion of the district court. *Minuteman Aviation, Inc. v. Swearingin*, 237 Mont. 207, 212, 772 P.2d 305, 308-09 (1989). We review such decisions for an abuse of discretion. *See Envtl. Contractors, LLC v. Moon,* 1999 MT 178, ¶ 19, 295 Mont. 268, 983 P.2d 390.

## DISCUSSION

¶16 **Issue One:** *Did the District Court err in granting the defendants' motions to dismiss for lack of personal jurisdiction?*

¶17 In its decision, the District Court analyzed the propriety of personal jurisdiction over the defendants under the following two-part inquiry:

> For a Montana court to exercise jurisdiction over a nonresident defendant, two questions must be considered. (1) Does the nonresident defendant come within the provisions of Montana's long-arm jurisdiction statute; and (2) would exercise of long-arm jurisdiction over the nonresident comport with traditional notions of fair play and substantial justice? *Simmons v. State* (1983), 206 Mont. 264, 271, 670 P.2d 1372, 1376 (citations omitted).

9

> If we conclude, as a matter of statutory construction, that the nonresident did not engage in any of the several activities enumerated in our long-arm statute, our analysis ends and we must decline jurisdiction. However, if the non-resident has done something which potentially confers jurisdiction, we will advance to the due process component which is ultimately determinative of the jurisdictional question. *Simmons,* 206 Mont. at 272, 670 P.2d at 1376.

*B.T. Metal Works v. United Die & Mfg. Co.*, 2004 MT 286,¶ 16, 323 Mont. 308, 100 P.3d 127.

¶18 Turning first to M. R. Civ. P. 4B(1)(a), the District Court rejected the argument that any of the defendants were subject to jurisdiction in Montana based on the transaction of business here. The District Court specifically distinguished the facts at bar from those in *Great Plains Crop Mgmt., Inc., v. Tryco Mfg. Co., Inc.*, 554 F. Supp. 1025 (D. Mont. 1983), a case relied upon by Bunch. In that case, the federal district court found that jurisdiction was proper over an out-of-state corporation when it conducted "substantial" activities in Montana, including marketing in Montana, accepting sales calls and soliciting business here, and consummating sales with Montana residents. *Great Plains*, 554 F. Supp. at 1027. No such comparable business activities on behalf of the defendants were present in this case. While the District Court acknowledged that 14 Lancair aircraft were found within the state of Montana, it concluded this was insufficient due to the lack of evidence that the presence of those aircraft in Montana was due to any business conducted here. More specifically, the District Court concluded that even a sale of such an aircraft to a person in Montana would not be relevant to the aircraft in this case, since its presence in Montana was due solely to the unilateral activity of Jeffrey Bunch.

¶19    However, the District Court did conclude that because the alleged tort accrued in Montana, Montana jurisdiction would be proper under M. R. Civ. P. 4B(1)(b). The District Court then went on to consider whether the exercise of long-arm jurisdiction over the non-resident defendants comported with traditional notions of fair play and substantial justice. In analyzing this issue, the District Court relied upon *B.T. Metal Works*.

> In *Simmons,* we explained that the Due Process Clause of the Fourteenth Amendment to the United States Constitution limits the power of a state court to render a valid personal judgment against a non-resident defendant, and that a state may exercise personal jurisdiction over a non-resident only if minimum contacts between the defendant and the forum state exist. *Simmons,* 206 Mont. at 272-73, 670 P.2d at 1376-77 (citations omitted). We adopted the Ninth Circuit test for determining whether the exercise of jurisdiction comports with due process:
>
> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking its laws.
>
> (2) The claim must be one which arises out of or results from the defendant's forum-related activities.
>
> (3) Exercise of jurisdiction must be reasonable.
> *Simmons,* 206 Mont. at 276, 670 P.2d at 1378 (citing *Data Disc, Inc. v. Systems Tech. Assoc., Inc.* (9th Cir. 1977), 557 F.2d 1280, 1287).

*B.T. Metal Works*, ¶ 34.

¶20    The District Court applied this test in granting the defendants' motions and held that personal jurisdiction over them would not comport with due process. The District Court noted that Bunch did not need to satisfy all three elements, but that if she was successful in showing that the defendants purposefully availed themselves of the privilege of conducting activities in Montana, a presumption would arise that personal

11

jurisdiction was reasonable. In considering the first component of this analysis, the District Court turned again to *B.T. Metal Works*:

> A nonresident defendant purposefully avails itself of the benefits and protections of the laws of the forum state when it takes voluntary action designed to have an effect in the forum. Conversely, a defendant does not purposefully avail itself of the forum's laws when its only contacts with the forum are random, fortuitous, attenuated, or due to the unilateral activity of a third party. The defendant that invokes the laws of the forum state by purposefully availing itself of the privilege of conducting activities within the forum should reasonably anticipate being haled into court in the forum state, and the exercise of jurisdiction over such a defendant is fundamentally fair.

*B.T. Metal Works*, ¶ 35 (citation omitted).

¶21 Based on the affidavits submitted in conjunction with their respective motions, (*see* ¶¶ 5, 9-11), the District Court concluded that none of the defendants had purposefully availed themselves of Montana law. Moreover, the District Court concluded that factor two—whether the claim arose from the defendants' forum-related activities—was also not satisfied because Bunch's claim arose solely from the random, fortuitous, and unilateral activity of Jeffrey Bunch in flying the plane to Montana. Accordingly, jurisdiction was presumptively unreasonable.

¶22 The District Court went on to consider whether jurisdiction would comport with notions of "fair play and substantial justice," under additional considerations set forth in *World-Wide*.

> Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, see *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); the plaintiff's interest in obtaining convenient and

12

> effective relief, see *Kulko v. California Superior Court, supra*, 436 U.S. [84, 92], 98 S.Ct. [1690, 1697 (1978)], at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. *Shaffer v. Heitner*, 433 U.S. 186, 211, n. 37, 97 S.Ct. 2569, 2583, n. 37, 53 L.Ed.2d 683 (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see *Kulko v. California Superior Court, supra*, 436 U.S., at 93, 98, 98 S.Ct., at 1697, 1700.

*World-Wide*, 444 U.S. at 292, 100 S. Ct. at 564-65.

¶23 The District Court concluded that Montana's interest in the dispute was greatly diminished due to the fact that none of the parties were residents of Montana. Moreover, Montana would be equally inconvenient for all parties, and the most efficient resolution of the dispute would be in Oregon, where the majority of the parties reside or have their principal places of business. Additionally, the District Court noted that Bunch had an opportunity to file suit in Oregon, but instead chose to file in Montana. Thus, Bunch's interest in obtaining convenient and effective relief could have equally been served by filing suit in Oregon, where the parties reside. Although Bunch argued that Oregon was no longer an available forum because the statute of limitations had run there, the District Court did not find this argument compelling. Because Bunch had failed to satisfy the first two factors under *Simmons* and jurisdiction over the defendants would be unreasonable and not comport with notions of "fair play and substantial justice," the District Court granted the defendants' motions to dismiss for lack of personal jurisdiction.

¶24 The District Court concluded its order by rejecting Bunch's argument that personal jurisdiction over the defendants would be proper based solely on their actions of

placing a product into the stream of commerce and having it end up in Montana. The District Court rejected the proposition that due process was satisfied on the basis that the defendants should have foreseen that their products (i.e., the airplane and its component parts) could have ended up in Montana since an airplane can potentially go anywhere at any time. In reaching this conclusion, the District Court relied heavily upon *World-Wide* and its progeny, including *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174 (1985), and *Asahi Metal Indus. Co, Ltd.. v. Sup. Ct. of Ca.*, 480 U.S. 102, 107 S. Ct. 1026 (1987).

¶25    In *World-Wide,* the United States Supreme Court considered whether due process was satisfied if an Oklahoma court exerted personal jurisdiction over a New York automobile retailer, Seaway Volkswagen, Inc. (Seaway), and its regional distributor, World-Wide Volkswagen Corp. (World-Wide), whose only connection with Oklahoma was the fact that an Audi automobile sold in New York to a New York resident was involved in a crash in Oklahoma. *World-Wide,* 444 U.S. at 288-89, 100 S. Ct. at 562-63. World-Wide was a New York corporation which distributed vehicles, parts, and accessories to retail dealers in New York, New Jersey, and Connecticut. Seaway was one of the dealers, and was located only in New York. Neither defendants had any contacts whatsoever with Oklahoma, aside from the fact that an accident involving a car sold by Seaway to a New York resident occurred there. By contrast, the automobile manufacturer, Audi, and its importer, Volkswagen of America (Volkswagen), were involved in a nationwide distribution of the Audi automobiles. Neither Audi nor Volkswagen contested personal jurisdiction before the United States Supreme Court.

¶26     The plaintiffs argued in part that personal jurisdiction over Seaway and World-Wide was appropriate because an automobile, by its very design and purpose, is mobile and thus it was foreseeable that the Audi sold by Seaway and distributed by World-Wide could cause injury in Oklahoma.  The Supreme Court explicitly rejected this argument, stating that " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."  *World-Wide*, 444 U.S. at 295, 100 S. Ct. at 566.

> If foreseeability were the criterion, a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there, see *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*, 239 F.2d 502, 507 (CA4 1956); a Wisconsin seller of a defective automobile jack could be haled before a distant court for damage caused in New Jersey, *Reilly v. Phil Tolkan Pontiac, Inc.*, 372 F.Supp. 1205 (N.J.1974); or a Florida soft-drink concessionaire could be summoned to Alaska to account for injuries happening there, see *Uppgren v. Executive Aviation Services, Inc.*, 304 F.Supp. 165, 170-171 (Minn.1969).  Every seller of chattels would in effect appoint the chattel his agent for service of process.  His amenability to suit would travel with the chattel.  We recently abandoned the outworn rule of *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), that the interest of a creditor in a debt could be extinguished or otherwise affected by any State having transitory jurisdiction over the debtor. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).   Having inferred the mechanical rule that a creditor's amenability to a *quasi in rem* action travels with his debtor, we are unwilling to endorse an analogous principle in the present case.

*World-Wide*, 444 U.S. at 296, 100 S. Ct. at 566-67 (footnote omitted).

¶27     The Supreme Court went on to note that foreseeability was not "irrelevant," but that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably

15

anticipate being haled into court there." *World-Wide*, 444 U.S. at 297, 100 S. Ct. at 567.

The Supreme Court applied this rationale to the facts before it as follows:

> When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.
>
> But there is no such or similar basis for Oklahoma jurisdiction over World-Wide or Seaway in this case. Seaway's sales are made in Massena, N. Y. World-Wide's market, although substantially larger, is limited to dealers in New York, New Jersey, and Connecticut. There is no evidence of record that any automobiles distributed by World-Wide are sold to retail customers outside this tristate area. It is foreseeable that the purchasers of automobiles sold by World-Wide and Seaway may take them to Oklahoma. But the mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.

*World-Wide*, 444 U.S. at 297-98, 100 S. Ct. at 567 (citation and quotations omitted).

¶28 In *Burger King Corp.*, the Supreme Court affirmed its holding in *World-Wide* stating that "the constitutional touchstone [is] whether the defendant purposefully established 'minimum contacts' in the forum State. Although it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal

16

jurisdiction." *Burger King Corp.*, 471 U.S. at 474, 105 S. Ct. at 2183 (citations and footnote omitted). Similarly, in *Asahi Metal*, the Supreme Court stated that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal*, 480 U.S. at 112, 107 S. Ct. at 1032.

¶29 Relying on this precedent, the District Court distinguished several cases relied upon by Bunch, including *Bullard v. Rhodes Pharmacal Co. Inc.*, 263 F. Supp. 79 (D. Mont. 1967), *Scanlan v. Norma Projektil Fabrik,* 345 F. Supp. 292 (D. Mont. 1972), *Keckler v. Brookwood Country Club*, 248 F. Supp. 645 (N.D. Ill. 1965), *Tedford v. Grumman Am. Aviation Corp.*, 488 F. Supp. 144 (N.D. Miss 1980), and *Bach v. McDonnell Douglass, Inc.*, 468 F. Supp. 521 (D. Ariz. 1979). In *Bullard*, a non-resident Ohio corporation with its principal place of business in Illinois, received orders from wholesalers and retailers in Montana and shipped its products here. Although the volume of business the non-resident corporation conducted with Montana was slight, a federal district court held that the non-resident defendant evinced a general intent to ship its products to Montana for sale here. *Bullard*, 263 F. Supp. at 83. This intent, combined with an alleged tort which occurred here, was sufficient to confer personal jurisdiction. Here, by contrast, the District Court noted that Bunch failed to demonstrate any general intent on behalf of the defendants to sell products in Montana, and further, failed to demonstrate that they had actually sold any products here.

¶30 In *Scanlan*, a foreign defendant in the business of selling ammunition had an American distributor and an Idaho retailer, but no contacts of any kind of Montana. A

plaintiff purchased ammunition in Idaho and transported it to Montana where it malfunctioned and injured the plaintiff. The federal district court held that jurisdiction over the foreign corporation in Montana was proper in part because "due process is not denied when a manufacturer who sells good intending that they be generally distributed and used in any place where a market may be found is forced to defend those products in the places where the products go." *Scanlan*, 345 F. Supp. at 293. The District Court noted that the most distinguishing feature between *Scanlan* and the case at bar was the fact that *Scanlan* was decided 8 years before *World-Wide*. As such, it did not address notions of "fair play and substantial justice" and was in clear conflict with the due process analysis now employed by this Court and the United States Supreme Court. Similarly, while *Keckler*, another case cited by Bunch, also held that the mere act of placing a product into the stream of commerce would be sufficient to subject a defendant to personal jurisdiction, *see Keckler*, 248 F. Supp. at 649, the District Court noted that it too had been decided many years before *World-Wide* and is out of step with current due process jurisprudence. Additionally, *Bach*, a case with a similar holding as well, was also decided before *World-Wide*, and thus held inapplicable by the District Court on the grounds that it had been superseded by *World-Wide*.

¶31 In *Tedford*, two out-of-state manufacturers were sued for negligence after an accident involving the crash of a crop duster in Mississippi. One of the manufacturers (Grumman American Aviation Corporation) had built and sold the airplane, while the other (Engine Support) had manufactured the engine. Engine Support argued that permitting Mississippi to exercise personal jurisdiction over it would offend "traditional

18

notions of fair play and substantial justice" under *Intl. Shoe*. The federal district court disagreed and held as follows:

> [The *World-Wide*] decision by the United States Supreme Court on the issue before the court in the action sub judice discusses in detail the problems presented by the question of in personam jurisdiction by a state court over a nonresident via a state long-arm statute such as the one enacted by the Mississippi Legislature, Miss.Code, 1972, Ann. § 13-3-57, and plainly demonstrates that each case must be decided on the facts of the case then under consideration. The [*World-Wide*] decision contains this relevant statement:
>
>> The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.
>
> — U.S. at — 100 S. Ct. at 567.
>
> The court holds that the facts reflected by the record in the action sub judice will support in personam jurisdiction over defendant Engine Support. This defendant remanufactured the engine in question, and furnished it to the aircraft manufacturer for incorporation into an aircraft to be used in agricultural pursuits by the ultimate user. In doing so, Engine Support delivered the remanufactured engine into the stream of commerce with the expectation that it would be purchased and used by someone engaged in agricultural pursuits, in this case, as the plaintiff.

*Tedford*, 488 F. Supp. at 147.

¶32 The District Court maintained that *Tedford*, while certainly supportive of Bunch's position, had taken the holding in *World-Wide* out of context and was not reliable. The District Court observed that in *World-Wide*, neither Audi nor Volkswagen contested jurisdiction because they intended to manufacture and distribute their vehicles throughout the United States. *See* ¶ 25 (discussing *World-Wide*). Thus, this statement from *World-Wide* would only apply to those entities or persons who actually intend the distribution

19

and purchase of their products in the forum state. By contrast, Seaway and World-Wide, with their regional and limited range of distribution, were held not to be subject to personal jurisdiction in Oklahoma, on the grounds that to do so would run afoul of due process concerns. The District Court explained this distinction, as related to the facts at bar, as follows:

> Here, Lancair does not intend sales in every state in the nation. Specifically as it pertains to Montana, Lancair—and [the] component parts upon which Lancair relies for its planes manufactured by Teledyne for example—has taken steps to limit the area of distribution and sale of the product. *Accord Bullard*, 263 F. Supp. at 83. Thus here, as in *World-Wide Volkswagen*, the transportation of the airplane at issue into Montana was the result of the unilateral activity of Mr. Bunch whose estate now claims some relationship with these Defendants in Montana. Such contact does not satisfy the due process requirements of contact with the State of Montana to support jurisdiction.

¶33 Bunch maintains the District Court erred in several respects. First, Bunch asserts that it is unaware whether any of the defendants would be subject to general jurisdiction in Montana under M. R. Civ. P. 4B(1) due to the fact that the District Court denied its requests for jurisdictional discovery. Similarly, with respect to specific or long-arm jurisdiction under M. R. Civ. P. 4B(1)(a), based on the defendants' transaction of business in Montana, Bunch asserts that she has made a colorable claim that the defendants do conduct business here, in spite of the fact that she was denied discovery. In this regard, Bunch notes that Lancair sells home-built aircraft kits, conducting a substantial portion of its business and advertising by mail-order and an interactive website, and that there are at least 14 Lancair aircraft owned and registered by Montana residents. Bunch further asserts that FAA records indicate that at least 1,521 aircraft

20

registered in Montana have engines manufactured by Teledyne, and that its aircraft engines are distributed throughout the world and Montana, and are incorporated into aircraft flown in this state.[1]

¶34 Bunch also maintains that long-arm jurisdiction over the defendants is proper under M. R. Civ. P. 4B(1)(b) based on the commission of acts which resulted in the accrual of a tort action in Montana. Bunch asserts that the District Court held that most of the defendants in this case in fact conceded that long-arm jurisdiction could be satisfied under M. R. Civ. P. 4B(1)(b). Accordingly, Bunch argues that the dispositive issue on appeal is whether acquiring jurisdiction over the defendants in Montana would satisfy due process concerns.

¶35 As Bunch correctly notes, the exercise of long-arm jurisdiction satisfies due process concerns so long as the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Intl. Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945). Bunch goes on to correctly observe that the three-factor due process test employed by the District Court in this case was first enunciated by this Court in *Simmons*, and was adopted in Montana from the Ninth Circuit's decision in *Data Disc*. *See Simmons*, 206 Mont. at 276, 670 P.2d at 1378 (quoting *Data Disc*, 557 F.2d at 1287).

---

[1] Teledyne asserts evidence concerning the presences of its engines in Montana is not properly part of the record on appeal. Teledyne notes that Bunch submitted this evidence to the District Court in a supplemental memorandum in response to Teledyne's motion to dismiss. However, the District Court subsequently struck Bunch's supplemental memorandum in an order dated April 28, 2006. In her reply brief, Bunch does not contest or oppose Teledyne's assertions in this regard. At any rate, evidence concerning the presence of Teledyne's engines in Montana does not affect our ultimate disposition of Bunch's appeal.

¶36 Bunch then maintains that the three-factor test employed by the District Court has been superseded by more recent Ninth Circuit jurisprudence, and that the District Court should have employed this new approach when analyzing whether jurisdiction over the defendants would comport with due process. Bunch argues that when the *Data Disc* test was formulated by the Ninth Circuit, a plaintiff had to demonstrate each of the three elements to establish that jurisdiction comported with due process. Since *Data Disc* was decided, however, the Ninth Circuit has relaxed the due process test as evidenced in such cases as *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182 (9th Cir. 2002), *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392 (9th Cir. 1986), and *Robinson Corp. v. Auto-Owners Ins. Co.*, 304 F. Supp. 2d 1232 (D. Haw. 2003). Bunch urges this Court to adopt the more recent Ninth Circuit test in evaluating whether jurisdiction over these defendants comports with due process, and reverse the District Court's decision.

¶37 Under this approach, Bunch argues that it does not need to show that the defendants have directly and purposefully availed themselves of Montana law. Instead, it is sufficient to show purposeful availment in the form of a foreign action having an in-forum effect. Here, the fact that defendants' defective products were flown into Montana and crashed here were sufficient to meet this standard. In this connection, Bunch further asserts that the presence of Lancair planes and Teledyne engines in Montana demonstrates a sufficient in-forum effect. Bunch argues that the defendants cannot credibly claim that they can only be sued in their respective home states of California, Oregon, and Alabama, and expect to avoid personal jurisdiction in Montana where their

22

products caused injuries, simply because those aircraft and components were built and sold in another state.

¶38   In addition to her argument for adopting a more flexible approach to the due process analysis, Bunch also argues that other jurisdictions have held that the requisite minimum number of contacts to confer personal jurisdiction are established when a product manufacturer or component part manufacturer distributes its products into the interstate stream of commerce.  Before the District Court, Bunch cited examples of such cases including *Great Plains, Bullard, Scanlan, Keckler*, *Tedford*, and *Bach,* addressed above and rejected by the District Court.  On appeal, Bunch argues that the District Court erred, and that the sale of aircraft and their components subjects the defendants to litigation in a forum other than the originating state.

¶39   In arguing that the District Court erred when it rejected her argument, Bunch now adds further cases to support her contention, including *Continental Oil Co. v. Atwood & Morrill Co.*, 265 F. Supp. 692 (D. Mont. 1967), *Rockwell Intl. Corp. v. Costruzioni Aeronautiche Giovanni Augusta*, 553 F. Supp. 328 (E.D. Pa. 1982),  *Miller v. Trans World Airlines, Inc.*, 302 F. Supp. 174 (E.D. Ky. 1969), *Gill v. Fairchild Hiller Corp.*, 312 F. Supp. 916 (D.N.H. 1970), and *Vibratech, Inc. v. Frost*, 661 S.E.2d 185 (Ga. App. 2008).  Bunch argues that these cases generally stand for the proposition that in situations involving aircraft and their component parts, minimum contacts are established in any state where the manufacturer can expect that its products will go.  Given the nature of aircraft and air travel, Bunch maintains that it was reasonably foreseeable that an aircraft incorporating the defendants' alleged defective design, manufacture, or components,

23

could crash in Montana. Furthermore, Bunch argues that none of her authority is affected by *World-Wide* and that courts in fact continue to rely on *World-Wide* as authority for the proposition that the exercise of jurisdiction over non-resident airplane/component manufacturers is appropriate even when they attempt to limit their sales to in-state concerns, but know that the planes will be flown out-of-state.

¶40 We disagree with Bunch, and conclude that the District Court did not err in determining that the exercise of jurisdiction over the defendants would not comport with notions of "fair play and substantial justice" and would be unreasonable under the circumstances at bar. In this case, the District Court correctly concluded that specific, or long-arm, jurisdiction would be appropriate over the defendants because the alleged tort accrued in Montana. The question, therefore, is whether the exercise of jurisdiction would comport with due process.

¶41 In conducting its analysis of this issue, the District Court correctly relied upon the three-factor due process test we initially adopted from the Ninth Circuit in *Simmons*. The District Court, citing to *B.T. Metal Works*, ¶ 34, also correctly noted that Bunch did not need to satisfy all three elements to establish personal jurisdiction. As stated by the District Court:

> The plaintiff need not demonstrate each of the three elements to establish jurisdiction; once the plaintiff demonstrates that the . . . defendant has purposefully availed itself of the privilege of conducting activities in Montana, a presumption of reasonableness arises, which a defendant can overcome only by presenting a compelling case that jurisdiction would be unreasonable.

¶42 After concluding that Bunch failed to show either that the defendants purposefully availed themselves of the privilege of conducting activities in Montana, or that the claim arose out of the defendants' forum-related activities, the District Court then when on to consider whether the exercise of jurisdiction would be reasonable under *World-Wide*. The test employed by the District Court tracks the test this Court originally set forth in *Simmons Oil Corp. v. Holly Corp.*, 244 Mont. 75, 796 P.2d 189 (1990).

> The exercise of jurisdiction must be reasonable to comport with due process. In *Simmons* [*Oil Corp.*], 244 Mont. at 87-88, 796 P.2d at 197, we enumerated several factors to consider when examining the reasonableness of jurisdiction:
>
> (1) The extent of the defendant's purposeful interjection into Montana;
> (2) The burden on the defendant of defending in Montana;
> (3) The extent of conflict with the sovereignty of the defendant's state;
> (4) Montana's interest in adjudicating the dispute;
> (5) The most efficient resolution of the controversy;
> (6) The importance of Montana to the plaintiff's interest in convenient and effective relief; and
> (7) The existence of an alternative forum.
>
> Further, we noted that "[t]he above factors are not mandatory tests, each of which the plaintiff must pass in order for the court to assume jurisdiction. Rather, the factors simply illustrate the concepts of fundamental fairness, which must be considered in each jurisdictional analysis." *Simmons* [*Oil Corp.*], 244 Mont. at 88, 796 P.2d at 197.

*Nasca v. Hull*, 2004 MT 306, ¶ 32, 323 Mont. 484, 100 P.3d 997.

¶43 Contrary to Bunch's assertions, the analysis employed by the District Court is more or less the same due process analysis currently conducted by the Ninth Circuit. As stated by the Ninth Circuit in *Ochoa*:

> Although Ninth Circuit law formerly required a plaintiff to demonstrate each of these three factors to establish specific jurisdiction, *see Data Disc, Inc. v. Sys. Tech. Assoc.,* 557 F.2d 1280, 1287 (9th Cir.1977),

25

this court has, in light of subsequent Supreme Court precedent, adopted a more "flexible approach." *Brand v. Menlove Dodge,* 796 F.2d 1070, 1074 (9th Cir.1986). Jurisdiction may be established with a lesser showing of minimum contacts "if considerations of reasonableness dictate." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir.1986); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "Under this analysis, there will be cases in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts to allow the state to exercise personal jurisdiction if such exercise is sufficiently reasonable." *Brand,* 796 F.2d at 1074.

*Ochoa*, 287 F.3d at 1188 n.2.

¶44 Here, the District Court noted that Bunch did not, in fact, have to satisfy all three factors of the *Data Disc* test—an approach consistent with the Ninth Circuit case law cited by Bunch. More importantly, the District Court found that Bunch failed to satisfy any of the tests whatsoever. Bunch has failed to demonstrate that its conclusions in this regard were in error.

¶45 On appeal, Bunch cites to cases from other jurisdictions to support the notion that the defendants' actions in this case constituted the type of purposeful availment sufficient to permit personal jurisdiction. However, they are all distinguishable. In *Robinson*, for instance, the federal district court of Hawaii held that a non-resident insurer had purposefully availed itself of activities in a forum based on a coverage policy which provided coverage in the forum state. *Robinson*, 304 F. Supp. 2d at 1238. Setting aside the fact that such a decision is not binding authority on this Court, it is also clearly distinguishable because it was decided based on concerns unique to the "insurer-defendant context." *Robinson*, 304 F. Supp. 2d at 1237 n. 8. Here, none of the defendants are insurers with respect to Jeffrey Bunch or his estate.

26

¶46 In *Continental Oil*, the federal district court in Montana held that the shipment of a product by an out-of-state defendant to a purchaser in Montana was sufficient to meet the minimum contacts test and confer jurisdiction upon Montana. *Continental Oil Co.*, 265 F. Supp. at 699. This case was decided many years before *World-Wide* and the federal district court did not even conduct a due process analysis in that case. Moreover, it is factually distinguishable because Bunch has not alleged that the defendants sold products to Jeffrey Bunch in Montana. In a similar vein, *Bach*, *Miller*, *Gill*, and *Scanlan* are distinguishable for much the same reasons.

¶47 In *Rockwell Intl.,* a French manufacturer of custom-made ball bearings for helicopters (SNFA) was sued in Pennsylvania for negligence and breach of warranty. SNFA had manufactured ball bearings and shipped them to Rockwell in Pennsylvania for incorporation into a helicopter. *Rockwell Intl.*, 553 F. Supp. at 329-30. Rockwell incorporated the custom-made ball bearings into its helicopter, which later malfunctioned. SNFA contested the assertion of personal jurisdiction over it in Pennsylvania. The federal district court held due process would not be offended if SNFA was subject to long-arm jurisdiction in Pennsylvania. The federal district court found that SNFA purposefully availed itself of the privileges of conducting business in Pennsylvania because the ball bearings were specifically manufactured for sale to Rockwell with the knowledge that its helicopters would be manufactured throughout the United States. *Rockwell Intl.*, 553 F. Supp. at 331-32. Moreover, SNFA directly shipped the ball bearings through its distributor to Rockwell in Pennsylvania. In other words, the

sale, manufacture, and injury all occurred within Pennsylvania. *Rockwell Intl.*, 553 F. Supp. at 331.

¶48 Under factor two, whether SNFA purposefully availed itself of the privilege of conducting business in Pennsylvania, the federal district court noted that SNFA purposefully availed itself of Pennsylvania law when it worked closely with Rockwell to develop and design ball-bearings for its helicopters, which it knew would be distributed throughout the United States. In this regard, the federal district court noted the following:

> In *World-Wide Volkswagen,* the Supreme Court drew a distinction between a local or regionalized dealer and a manufacturer or major distributor. Except for a rare sale, the local dealer generally confines the market he serves to a limited area. However, the marketing territory and the sale of a product by a manufacturer or distributor is not intended to be so confined. The sale of its product to a distant state is not simply an isolated occurrence, but instead, arises from the corporation's affirmative efforts to serve, *directly or indirectly,* the largest possible market for its product.

*Rockwell Intl.*, 553 F. Supp. at 332.

¶49 Although SNFA argued that it could not be subject to personal jurisdiction in Pennsylvania based solely on the foreseeability that an accident involving its ball bearings could occur there, the federal district court noted that by choosing "to participate in a nation-wide marketing chain . . . the sale of products incorporating its bearings . . . [was] not merely foreseeable, but affirmatively welcomed." *Rockwell Intl.*, 553 F. Supp. at 333. Finally, the federal district court found that the exercise of personal jurisdiction was reasonable under factor three because "SNFA designed and manufactured a component that was incorporated into a product which was intended to be, and was, in

fact, sold in both Europe and the United States. Where that component allegedly fails and causes injury in the very market in which the product was expected to be sold, it is not unreasonable or unfair to require the defendant to be subject to suit in that forum." *Rockwell Intl.*, 553 F. Supp. at 334.

¶50 *Rockwell Intl.* is clearly distinguishable from the instant case. First, the District Court found, based on the affidavits of Lancair, Dukes, the Riddells, and the Neibauers, that none of these defendants have made any sales in, or have contacts with, Montana. Thus, these defendants could not reasonably be expected to be haled into court in Montana due solely to the unilateral act of a consumer. However, Bunch does allege that Teledyne is involved in a national chain of distribution. Under the analysis in *Rockwell Intl.*, these allegations would arguably establish that Teledyne has taken acts to purposefully avail itself of the laws of any state in which aircraft are sold which incorporate its parts. If the aircraft in this case had actually been sold in Montana, then Teledyne might expect to be haled into court here. However, even if Teledyne does participate in a national chain of distribution, including Montana—a set of facts which it disputes by affidavit—it would be unreasonable in this case to submit it to jurisdiction in Montana since the aircraft was not purchased here and neither Lancair, the Riddells, nor the Neibauers have any connections to Montana aside from the unilateral actions of Jeffrey Bunch. In other words, it would be unreasonable to hold that Teledyne, as a component part manufacturer, could be subject to personal jurisdiction in Montana while the other defendants could not. Thus, we find that *Rockwell Intl.* is distinguishable and does not support Bunch's argument for personal jurisdiction in this case.

29

¶51    A more recent case relied upon by Bunch, *Vibratech*, is distinguishable as well.  In that case, Vibratech, Inc. (Vibratech) was a Delaware corporation with its principal place of business in New York.  Vibratech manufactured a component known as a viscous damper, a mechanism designed to reduce engine vibration.  This damper was sold to Teledyne, which in turn incorporated it into an engine which was installed in a Cessna twin engine aircraft that crashed in Tennessee on December 2, 2004, killing several passengers.  *Vibratech*, 661 S.E.2d at 187.  Three of the passengers who were killed in the crash were residents of Georgia.  *Vibratech*, 661 S.E.2d at 191.  The estates of the decedents killed in the crash filed suit against Vibratech and other defendants in Georgia.  Vibratech moved to dismiss the complaint against it for lack of personal jurisdiction.  Prior to the accident, Vibratech had declared bankruptcy and ceased to be a functioning business.

¶52    The Georgia appeals court determined that it had to consider Vibratech's "intangible contacts" under Georgia's long-arm jurisdiction statute, "subject to the limits of due process," in order to determine if Georgia had personal jurisdiction.  *Vibratech*, 661 S.E.2d at 189.  The appeals court applied a three-factor due process analysis analogous to that applied by the District Court in the case at bar.  *See Vibratech*, 661 S.E.2d at 189.  Under factor one, whether Vibratech had purposefully done some act or consummated some transaction in Georgia, the appeals court considered this factor satisfied because:  (1) Vibratech sold several hundred dampers per year to Teledyne for incorporation into its engines; and (2) Teledyne agreed to indemnify Vibratech under an aviation liability policy which explicitly included a "worldwide" area of coverage.

*Vibratech*, 661 S.E.2d at 190. This demonstrated that Vibratech shipped its products for incorporation into Cessna engines for re-sale into locales across the country, including Georgia. *Vibratech*, 661 S.E.2d at 190. Consequently, because this activity was "directly connected" to the cause of action in that case, the court of appeals found that factor two, whether the cause of action arose from or was connected with an act or transaction in Georgia, was satisfied as well. *Vibratech*, 661 S.E.2d at 191.

¶53    Finally, turning to factor three, whether the exercise of jurisdiction over Vibratech would offend traditional fairness and substantial justice, the appeals court held as follows:

> Three of the plaintiffs in this consolidated matter are residents of Georgia, and the other three are residents of surrounding states. Certainly, Georgia has an interest in providing an effective means of redress for citizens whose health and welfare have been injured by defective products which our commercial laws permit to be imported into the state. And it would place an undue burden upon the plaintiffs to pursue a separate action against Vibratech in another state such as New York or Delaware. It would be no less burdensome for Vibratech to defend a separate action in New York than to defend this action in Georgia where all other issues and the alleged joint tortfeasors may be joined. This is especially true as Vibratech is a defunct corporation, with no officers, directors or employees, and it has local counsel to represent it in this action. Thus, judicial economy and efficiency are served by extending jurisdiction over Vibratech in this case.

*Vibratech*, 661 S.E.2d at 191 (quotations, alterations, and footnote omitted).

¶54    *Vibratech* is distinguishable in several important respects. First, of all the defendants, only Teledyne is alleged to participate in a nationwide distribution of its products. Because of this, the *Vibratech* holding would at best be applicable only to Teledyne. However, as noted above, even if Teledyne arguably availed itself of the

31

privilege of conducting business in Montana by virtue of a nationwide distribution of its products, it would be unreasonable to subject it to jurisdiction in Montana in this case because the aircraft which crashed here was sold by Lancair, which does not do business in or have any contacts with Montana. In a similar respect, we cannot say that Teledyne's forum-related activities gave rise to the cause of action in this case simply because its engine was incorporated into the Lancair IV-P, which again, was sold in a market that did not include Montana. Finally, returning to an earlier point, unlike the plaintiffs in *Vibratech*, the plaintiffs here are not Montana residents, and there is simply no reason why Montana's interest in this dispute is greater than Oregon's, or why it would be more effective to resolve the dispute here. The fact that the statute of limitations has run on a claim in Oregon, which would most likely have personal jurisdiction over all the parties, is simply not a relevant consideration in determining whether personal jurisdiction in this case would be reasonable.

¶55  We conclude that the District Court properly analyzed the personal jurisdiction question under M. R. Civ. P. 4B(1), and correctly determined that asserting personal jurisdiction over these defendants in Montana would not comport with due process. Further, the District Court correctly distinguished the cases relied upon by Bunch for her argument that personal jurisdiction was proper based on the mere fact that the defendants placed a product into the stream of commerce. On appeal, the cases cited by Bunch in support of this argument are distinguishable as well. Thus, we affirm the District Court.

¶56  **Issue Two:**  *Did the District Court abuse its discretion by denying Bunch's motions for jurisdictional discovery?*

32

¶57 The District Court denied Bunch's requests for jurisdictional discovery, concluding that she failed to make a colorable or prima facie showing that Montana's long-arm statute applies to the defendants. The District Court, citing *Minuteman Aviation*, noted that such discovery would be appropriate if there was a conflict in facts, or competing affidavits, but that such a situation was not present here. According to the District Court, the affidavit showing that there were 14 Lancair aircraft in Montana did not contradict the defendants' assertions that they had not purposefully availed themselves of Montana law, or that their contacts bear no relation or causal connection to the tort at issue. The District Court discounted the significance of the presence of the defendants' products in Montana as it relates to the personal jurisdiction question, because the defendants did not take any actions to bring Jeffrey Bunch's airplane into this state, market the plane in this state, or provide sales to consumers in this state.

¶58 Bunch argues the District Court abused its discretion in denying her discovery request. Bunch notes that both Lancair and Teledyne have products located in Montana. From this, Bunch suggests that there may be other contacts with Montana which could be authenticated through depositions or written discovery. In spite of the fact that all defendants have denied conducting any business in Montana, Bunch nonetheless argues that it should have the opportunity to test those averments through discovery. In her reply brief, Bunch argues specifically that Teledyne, as it is in the business of selling aircraft engines and spare parts, would likely have some additional contacts with Montana given that there are approximately 1,521 aircraft with Teledyne engines

33

registered in Montana.[2] Accordingly, Bunch argues she should be permitted the opportunity to conduct further discovery with respect to these defendants.

¶59 We conclude that the District Court did not abuse its discretion in denying Bunch's request for jurisdictional discovery. Where material jurisdictional facts are disputed, the district court has discretion to permit discovery to resolve any factual issues. *Minuteman Aviation*, 237 Mont. at 212, 772 P.2d at 308-09. Here, Bunch has not provided the Court with examples of any material disputed facts related to personal jurisdiction over the defendants in Montana. Bunch has merely alleged that further discovery *might* reveal facts which would contradict the factual assertions in the defendants' respective affidavits. Yet, as noted by the District Court, the presence of 14 Lancair aircraft, by itself, does not place the factual contents of those affidavits in dispute as it relates to the question of personal jurisdiction.

¶60 It bears repeating that the question before us is one of judicial discretion. We do not decide whether an opposite decision would have been acceptable, or if our decision might have been different—rather, we only determine if the District Court abused its discretion. Here, given that there were not materially disputed facts before the District Court at the time the motions were determined, we conclude that the District Court did not abuse its discretion in denying Bunch's request for additional discovery.

**CONCLUSION**

---

[2] As noted above (*see* ¶ 33 n.1), Teledyne maintains this evidence is not properly part of the record on appeal.

34

¶61 The District Court did not err in concluding that it would not comport with due process and would offend traditional notions of fair play and substantial justice for it to exercise personal jurisdiction over the defendants in Montana. Additionally, the District Court did not abuse its discretion in denying Bunch's request for discovery. Therefore, we affirm.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE